## KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* KAW VALLEY DRAINAGE DISTRICT.

## KANSAS. CITY TERMINAL RAILWAY. COMPANY *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

Nos. 313, 314.   Argued March 19, 20, 1914.—Decided April 6, 1914.

This court will read pleadings as alleging what they fairly would convey to an ordinarily intelligent lawyer by a fairly exact use of English speech. *Swift & Co.* v. *United States,* 196 U. S. 375.

This court must take the judgment under review as it stands and if it is absolute and not conditional it cannot be qualified by speculation as to what may in fact happen.

An out and out order of a state court to remove a bridge that is a necessary part of a line of interstate commerce is an interference with such commerce and with a matter that is under the exclusive control of Congress.

Interstate commerce is not a matter that is left to the control of the States until further action by Congress; nor is the freedom of that commerce from interference by the States confined to laws only; it extends to interference by any ultimate organ.

A direct interference by the State with interstate commerce cannot be justified by the police power; and so *held* that the destruction of a bridge across which an interstate railroad line necessarily passes cannot be justified by the fact that it helps the drainage of a district.

*Quære,* whether a consent by a Drainage District to the construction of a railroad bridge is not to be regarded as a license rather than an abdication of the continuing powers of the District to require subsequent elevation of the bridge.

87 Kansas, 272, affirmed.

THE facts, which involve the construction and validity,

under the commerce clause of the Federal Constitution, of orders of the state courts of Kansas directing railroad companies to remove bridges on lines of interstate commerce, are stated in the opinion.

*Mr. Samuel W. Moore*, with whom *Mr. Samuel W. Sawyer* and *Mr. James M. Souby* were on the brief, for plaintiffs in error.

*Mr. Thomas A. Pollock* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

These cases arise upon petitions for mandamus filed by the defendant in error, the Kaw Valley Drainage District. The allegations are that the Kansas River flows through the District, is a navigable stream, and in 1903 overflowed its banks, flooded a large part of Kansas City, Kansas, and caused great loss; that the harbor lines established by the United States and the lines for a levee along the banks established by the plaintiff substantially coincide; that the defendants respectively own bridges across the river which at their present elevation cause it to overflow; and that the plaintiff in pursuance of the power given to it by the State has ordered the defendants respectively to raise these bridges to specified heights and to remove the old ones, which the defendants have refused to do. On these petitions alternative writs issued, and thereupon the defendants made return, each making a general denial and setting up that its railway tracks across the bridge were used in commerce among the States and that such commerce would be cut off and destroyed by enforcement of the order, and claiming the protection of the Constitution, Art. I, § 8, (cl. 3). They each alleged also that to raise the bridges would require a raising of the grades of the streets for the approaches, and that the right to raise them depended on the consent of Kansas City, which the city refused to give; that the raising would cut in two inter-

secting tracks of other roads, that this could not be done
without the consent of such roads, which they also refused;
that the raising would do permanent damage to private
property abutting on the streets that would have to be
raised, and that the plaintiff had taken no steps to com-
pensate the owners; that the damage to the defendant
would exceed large sums mentioned; and that the plans
for the new bridges have not been approved by the
Secretary of War.  Act of March 3, 1899, c. 425, § 9.
30 Stat. 1121, 1151.   Each defendant relies upon the
Fourteenth Amendment.   The Terminal Company also
alleged a contract with the Drainage District which was
thought to preclude its present requirement, and to be
protected by the Constitution, Art. I, § 10.   The cases
were heard on the alternative writs and the returns, and
the Supreme Court of the State issued peremptory writs
requiring the defendants to clear the channel to specified
heights.  87 Kansas, 272.

Motions to dismiss were presented at the last term but
were denied, as the record shows not only that rights under
the Constitution and laws of the United States were
specially set up and claimed, but that the questions con-
cerning them are not of a kind to be dismissed.

The Supreme Court recognized that it could not order
the bridges to be raised to the required height without the
authority of the Secretary of War.   Therefore we may
lay on one side the somewhat surprising answer made to
the allegations that the consent of the city and other
railroads was necessary and was refused—the suggestion,
namely, that if the defendants wanted to do it they
would find some way of reaching their end.  See *Louisville
& Nashville R. R. Co.* v. *Central Stock Yards Co.*, 212 U. S.
132, 144.   It was not suggested that the railroads had the
power to reach the result by eminent domain.  See *Atlantic
Coast Line R. R. Co.* v. *North Carolina Corporation Com-
mission*, 206 U. S. 1, 27.   We lay on one side also various

over-refined objections to the defendants' pleadings made in the argument here, saying only that we read them as alleging what they fairly would convey to an ordinarily intelligent lawyer by a fairly exact use of English speech. *Swift & Co.* v. *United States,* 196 U. S. 375, 395. But the court went on, on the assumption that it would lead to the elevation of the bridges and seemingly for the purpose of accomplishing indirectly what it admitted that it could not do directly, to make an unqualified absolute order, as we have said, that the defendants should clear the channel of all obstructions on their lines up to the specified heights—in other words to remove the bridges as they stand.

These judgments must be taken as they read upon their face. They are not conditional orders to raise the bridge if the defendants can obtain the consent of parties not before the court and of one authority at least not subject to its control. They cannot be qualified by speculation as to what is likely to happen in fact. They are out and out orders to remove bridges that are a necessary part of lines of commerce by rail among the States. But that subject-matter is under the exclusive control of Congress and is not one that it has left to the States until there shall be further action on its part. The freedom from interference on the part of the States is not confined to a simple prohibition of laws impairing it, but extends to interference by any ultimate organ. It was held that under the permissive statute authorizing telegraph companies to maintain lines on the post roads of the United States a State could not stop the operation of the lines by an injunction for failure to pay taxes. *Western Union Telegraph Co.* v. *Attorney General of Massachusetts,* 125 U. S. 530. *Williams* v. *Talladega,* 226 U. S. 404, 415, 416. It would seem that the same principle applies to railroads under the commerce clause of the Constitution, especially if taken in connection with the somewhat similar statute now Rev.

Stats., § 5258. And so it is held. *Atlantic Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328, 334. *Mississippi R. R. Commission* v. *Illinois Central R. R. Co.,* 203 U. S. 335.

The decisions also show that a State cannot avoid the operation of this rule by simply invoking the convenient apologetics of the police power. It repeatedly has been said or implied that a direct interference with commerce among the States could not be justified in this way. "The state can do nothing which will directly burden or impede the interstate traffic of the company, or impair the usefulness of its facilities for such traffic." *Illinois Central R. R. Co.* v. *Illinois,* 163 U. S. 142, 154. *Austin* v. *Tennessee,* 179 U. S. 343, 349. *Atlantic Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328, 334. To destroy the bridges across which these railroad lines necessarily pass is at least as direct an interference with such commerce as to prohibit the importation of cattle or oleomargarine, or the export of natural gas. *Hannibal & St. Joseph R. R. Co.* v. *Husen,* 95 U.. S. 465. *Schollenberger* v. *Pennsylvania,* 171 U. S. 1. *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 262. Furthermore in the present case it is not pretended that local welfare needs the removal of the defendants' bridges at the expense of the dominant requirements of commerce with other States, but merely that it would be helped by raising them. The fact that the court cannot order them to be raised does not justify a judgment that they be destroyed even in the avowed expectation that what it wants but cannot command is all that will come to pass.

A strong argument was made for the plaintiffs in error that they never had been allowed their day in court, as matters put in issue by them, such as the necessity of the change, were assumed against them. It was urged with seeming justice that, granting that, as was said by the court, the order of the Drainage District was *prima facie* correct, still when that order was challenged in the pleadings, it could not be assumed to be valid at a hearing upon

the writs and returns. But we express no opinion upon this point or upon claims under the Fourteenth Amendment, as what we have said sufficiently decides the cases. The argument of the Terminal Company upon the contract with the Drainage District does not impress us. By way of compromise the Terminal Company's predecessor agreed to build a permanent bridge according to a plan, and the Drainage District "hereby consents to the construction of said permanent bridge . . . and declares that the same when constructed shall constitute a lawful structure . . . not waiving any right . . . to require the construction of an additional span." This coming from a board created to exercise police power not unnaturally would be construed rather as a license than as an abdication of a continuing duty, on which we are asked to take notice that new light had been shed by a subsequent flood that has given rise to cases before this court. But for the reasons that we have given the judgments must be reversed.

*Judgments reversed.*