# GEORGE W. BUSH & SONS COMPANY

## *vs.*

# PUBLIC SERVICE COMMISSION.

### *Interstate Commerce—Public Motor Vehicles—Control by State.*

Acts 1916, ch. 714, sec. 4, as amended by Acts 1922, ch. 401, sec. 4, empowering the Public Service Commission to grant or to refuse permits to operate motor vehicles for the public transportation of merchandise and freight, applies to the operation of motor trucks over routes between points in this state and points in another state.                    p. 575

In the absence of legislation on the subject by Congress, a state has the right to require a permit to be procured·by one seeking to operate a motor line between points in that state and points in another state, this not imposing any burden or restriction, directly or indirectly, upon the right to engage in interstate commerce, in violation of the United States Constitution.                    pp. 575-580

*Decided June 26th, 1923.*

Appeal from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Bill by the George W. Bush & Sons Company against William M. Maloy, J. Frank Harper and Ezra B. Whitman, constituting the Public Service Commission of Maryland. From an order sustaining a demurrer to, and dismissing, the bill, plaintiff appeals.   Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*William L. Rawls,* with whom was *George Weems Williams* on the brief, for the appellant.

*N. Charles Burke,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court of Baltimore City, passed on the 27th day of February, 1923, sustaining a demurrer to, and dismissing, the amended bill of the appellant, George W. Bush & Sons Company, a corporation organized under the laws of the State of Delaware, against the appellees, who constitute the Public Service Commission of Maryland.

The facts alleged in the bill are substantially as follows: The plaintiff at the time of, and prior to, the filing of the bill, was operating, as a common carrier, a line of steamboats on the Delaware River for the transportation, for hire, of goods, merchandise and other properties, between the cities of Philadelphia and Wilmington and, for a period approximately eighteen months before the tenth day of November, 1922, it was also operating a line of motor trucks in the transportation, for hire, of goods and merchandise and other property, from points in Maryland to Wilmington and other points in Delaware, connecting with its line of steamboats upon the Delaware River.

While so operating its truck line, it was, prior to the tenth day of November, 1922, notified by the Public Service Commission of Maryland, that it would be required to file an application with, and obtain from the commission permits, before it could lawfully operate its truck lines in Maryland, over the routes upon which it was then operating.

The plaintiff, on the 20th day of August, 1922, filed its application in the prescribed form with the commission, asking for permits to operate motor vehicles over State, state aid, improved county roads, and streets and roads of incorporated towns or cities in the State of Maryland, in the public transportation of merchandise or freight over specified routes between Chestertown, Maryland and the Maryland-Delaware state line by way of Elkton, between Providence, Maryland, the Maryland-Delaware state line by way of Elkton, and between Havre de Grace, Maryland, and the

Maryland-Delaware state line by way of Elkton, with the declared intention and purpose of extending the operation of its motor vehicles through and beyond the said Maryland-Delaware state line to Wilmington and other points in the State of Delaware. The commission set the application down for hearing on the 29th day of November, 1922. On that day evidence was heard in respect to the facts contained in the application, and in said hearing the plaintiff asked that its application be deemed by the commission as asking for permits to operate said lines of motor trucks, for the purpose already stated, between points in Maryland and points in Delaware in the doing of both an interstate and an intrastate business, as well as permits to operate said lines doing an interstate business solely, which request, as alleged in the bill, was granted by the commission.

The plaintiff at the time also made known to the commission that, if the permits were granted to it to do an interstate business solely, it would take out and pay for all licenses and comply in all respects with the statutes of the State, or any rule or regulation prescribed in respect thereto by any agency or instrumentality of the State.

The commission refused the permits asked for and, in the order refusing them, passed on the 20th day of February, 1922, declared

> "that the public welfare and convenience do not require the granting of the permits for which applica-
> tions have been made, as aforesaid, by the said The
> George W. Bush & Sons Co., but that on the contrary
> that the granting of such permits would be prejudicial
> to the welfare and convenience of the public."

The bill alleged the appellant's solvency, ability and willingness to operate its trucks in compliance with the law, and the rules and regulations of the commission passed and made in respect thereto.

The appellant further alleged that it was entitled to the permits asked for and that the operation of the trucks would

not cause any damage or injury to the highways and bridges, other than that caused by the same kind of motor trucks which were permitted to be used, and were used thereon by others.   They said the highways were not over crowded, nor unduly congested, and that all the bridges on the highways mentioned in the application are so constructed as to permit the use, over them, of heavier trucks than those used by the plaintiff.

The bill asked for an injunction restraining the commission from enforcing against the plaintiff or from prosecuting it for or on account of any alleged violation of the law or any order of the commission prohibiting the operation by it of said motor trucks in the manner stated in the appellant's applications.

A demurrer filed to the amended bill of the commission was by an order of the court sustained, and the bill dismissed. It was from that order, as we have already said, that this appeal was taken.

The commission, in its refusal to grant the permits asked for by the appellant, was governed and controlled by its construction of the Act of 1916, ch. 714, sec. 4, as amended by section 4 of chapter 401 of the Act of 1922, which is as follows:

"That it shall be the duty of the Public Service Commission of Maryland, upon the application of any motor vehicle owner for a permit to operate any motor vehicle for the public transportation of merchandise or freight over any specified route to investigate the expediency of granting said permit, the number of motor vehicles to be used, and the rate to be charged, and if, in the judgment of the Public Service Commission, it is deemed best for the public welfare and convenience that said permit should be granted, said Public Service Commission is hereby empowered and authorized to grant such permit subject to such conditions and terms and for such duration of time, not exceeding the period of twenty years, as it

may deem advisable. But, if said Public Service
Commission deems the granting of such permit preju-
dicial to the welfare and convenience of the public,
then the said Public Service Commission is hereby
empowered and authorized to refuse the granting of
same. The said Public Service Commission of Mary-
land is further empowered and authorized to make
such rules and regulations as it may deem necessary
to govern the control and operation of same, and en-
force same by such penalties, or forfeitures, as it may
prescribe, including the revocation of the permit grant-
ed under the provisions of this act."

The act in terms empowered and authorized the commis-
sion to refuse the granting of the permits asked for by the
appellant, if it deemed the granting of them was prejudicial
to the welfare or convenience of the public.

The first contention of the appellant is that it was never
intended by the Legislature of this State that said section 4
of the statute should apply to the operation of motor trucks
over routes between points in this state and points in another
state. There is certainly nothing in the wording of the
statute to indicate that it was the legislative intent to exclude
such routes from its provisions, and unless it be found that
the inclusion of them within the statute will be in conflict
with the federal constitution or some federal statute passed
pursuant thereto, the statute of this State should be held
to apply to them; and this question is involved in the second
contention of the appellee, that the Legislature of this State
has no right to enact any law making the procurement of a
permit necessary, before any person, firm, or corporation
may lawfully operate a motor truck line between points in
this state and points in some other states, because in so
doing the act would be in violation of article 1, section 8,
clause 3 of the federal constitution, under which the power
"to regulate commerce among the several states" was, by the
states, delegated to the federal government.

There have been many cases arising under the above provision, known as the commerce clause of the federal constitution, and a number of them have been cited by the appellant in support of its contention.

The two that it seems chiefly to rely upon are *Crutcher* v. *Kentucky*, 141 U. S. 47; *Adams Express Co.* v. *New York*, 232 U. S. 14.

In the first of these cases (*Crutcher* v. *Kentucky*) an act of the legislature of Kentucky provided that an agent of an express company not incorporated under the laws of that state should not carry on business therein, without first obtaining a license from the state, and that such agents should, before obtaining such license, satisfy the auditor of the state that the company represented by him had an actual capital of at least the amount named therein, and if he engaged in business without obtaining a license, he was subject to the payment of a fine. The Supreme Court in that case held the act was unconstitutional, as it was found to be in violation of the provision above mentioned.

In the *Adams Express Co.* case, an ordinance of the City of New York required an express company to obtain a local license as a condition precedent to its conducting, within the city, its interstate business. This ordinance, like the Kentucky statute, was declared unconstitutional, in that it required a party to take out a license for carrying on interstate commerce, in conflict with the commerce clause of the Constitution.

In these cases there was an attempt to prohibit persons from engaging in the classes of business therein mentioned until they had first paid the direct license or tax imposed upon them. The requirement of the act here under consideration is, that those wishing to use the roads and highways, mentioned in their application, for the public transportation of merchandise or freight, shall first obtain a permit from the Public Service Commission of the State. Neither the statute nor the order appealed from imposes any burden or

576. BUSH & SONS vs. PUBLIC SERV. COMM'N.

Opinion of the Court. [143

restriction, directly or indirectly, upon the plaintiff's right to engage in interstate commerce.

As stated in the brief of the appellee, "the State, at the cost of many million dollars to the taxpayers, has established a fine system of improved public highways, and is expending millions more in the extension, improvement, and maintenance of this system."

The public highways over which the appellant seeks to operate its motor trucks, as instrumentalities of interstate commerce, were either built by or owned by the State, or the counties traversed by them.

It was the duty of the commission, under the statute, upon the receipt of the appellant's application for permits to operate the motor truck lines named in the application, "to investigate the expediency of granting said permits, the number of the motor vehicles to be used and the rate to be charged," but, as stated by the statute, if the commission deemed the granting of such permits prejudicial to the welfare and convenience of the public, they were not only empowered and authorized to refuse the granting of the permits, but it was their duty to do so.

A statutory regulation of this character is essential not only to the protection of the above mentioned highways, built at great expense to the State and counties, but also to the safety of the public who travel upon them.

The roads and highways are subject to great damage and injury when used by very large motor vehicles equipped without regard to the effect their use will have upon the roads; and of course the injury or damage is greater when large numbers of them are operated thereon; consequently the number of them used for profit and gain in the transportation of freight or passengers should be restricted to the public need or convenience and, when the number is in excess thereof, their use becomes prejudicial to the welfare and convenience of the public.

The operation of motor trucks upon these highways in most, if not in all, cases is a great convenience to the public, especially to those persons living along the route on which they are operated. It is therefore important that the use of the highways shall be so regulated as to assure the enjoyment of this right to the public, which right may be seriously affected by the failure of those to whom the privilege is granted to give proper service, caused by their inability to operate with a profit, resulting from the excessive number to whom such privilege is granted.

The object and purpose of the act is to restrict to the needs of the public the number of motor vehicles used in the transportation of freight or merchandise upon any one route, and thereby avoid the additional injury and damage to the roads or highways, and the danger to persons traveling thereon, that would result from the use of a greater number than the needs and convenience of the public require. It must be that the safety of the traveling public is lessened by the increased number of motor trucks operating upon the roads.

It is admitted that Congress has enacted no legislation undertaking to regulate the instrumentalities here involved for carrying on interstate commerce, and thus it would seem that this case falls within the class of cases which are controlled by the principles enunciated in *The Minnesota Rate Cases,* 230 U. S. 352. In those cases Mr. Justice Hughes, in speaking for the Court, said:

"The grant in the Constitution of its own force, that is, without action by Congress, established the essential immunity of interstate commercial intercourse from the direct control of the states with respect to those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation should be prescribed by a single authority. It has repeatedly been declared by this Court that as to those subjects which require a general system or uniformity of regulation the power of Congress is exclusive. In other matters, admitting of diversity of treat-

ment according to the special requirements of local conditions, the states may act within their respective jurisdictions until Congress sees fit to act; and, when Congress does act, in the exercise of its authority overrides all conflicting state legislation.

"The principle, which determines this classification, underlies the doctrine that the states cannot under any guise impose direct burdens upon interstate commerce.  For this is but to hold that the states are not permitted directly to regulate or restrain that which from its nature should be under the control of the one authority and be free from restriction save as it is governed in the manner that the national legislature constitutionally ordains.

"Thus, the states cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it.

"They have no power to prohibit interstate trade in legitimate articles of commerce; or to discriminate against the products of other states; or to exclude from the limits of the state corporations or others engaged in interstate commerce or to fetter by conditions their right to carry it on; or to prescribe the rates to be charged for transportation from one state to another, or to subject the operations of carriers in the course of such transportation to requirements that are unreasonable or pass beyond the bounds of suitable local protection.

"But within these limitations there necessarily remains to the states, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected.  It extends to those matters of a local nature as to which it is impossible to derive from the constitutional grant an intention that they should go uncontrolled pending federal intervention.  Thus, there are certain subjects having the most obvious and direct relation to interstate commerce, which never-

theless, with the acquiescence of Congress, have been controlled by state legislation from the foundation of the government because of the necessity that they should not remain unregulated and that their regulation should be adapted to varying local exigencies; hence, the absence of regulation by Congress in such matters has not imported that there should be no restriction but rather that the states should continue to supply the needed rules until Congress should decide to supersede them. Further, it is competent for a state to govern its internal commerce, to provide local improvements, to create and regulate local facilities, to adopt protective measures of a reasonable character in the interest of the health, safety, morals and welfare of its people, although interstate commerce may incidentally or indirectly be involved. Our system of government is a practical adjustment by which the national authority as conferred by the Constitution is maintained in its full scope without unnecessary loss of local efficiency. Where the subject is peculiarly one of local concern, and from its nature belongs to the class with which the state appropriately deals in making reasonable provision for local needs, it cannot be regarded as left to the unrestrained will of individuals because Congress has not acted, although it may have such a relation to interstate commerce as to be within the reach of the federal power. In such case, Congress must be the judge of the necessity of federal action. Its paramount authority always enables it to intervene at its discretion for the complete and effective government of that which has been committed to its care, and, for this purpose and to this extent, in response to a conviction of national need, to displace local laws by substituting laws of its own. The successful working of our constitutional system has thus been made possible."

To shorten this opinion we have omitted from the above decision the great numbers of cases cited in support of the principles therein stated.

If the contention of the appellant be correct, that the attempted regulation of the use of the highways of this State

by the Public Service Commission under the statute mentioned is unconstitutional and void when applied to the appellant and others who apply for permits to engage in the transportation of freight and merchandise from points in this state to points in some other state, then there are no regulations of the use of the highways nor can there be any until Congress sees fit to pass them, and this it may never do.  If it does not, these valuable highways of the state will be subject to the use of motor vehicles of all sizes and character by the persons mentioned.  This should not be, and, in our opinion, is not the law.  But as we have said, this case is controlled by the principles laid down in *The Minnesota Rate Cases,* and until Congress passes some legislation regulating the use of said highways by the instrumentalities here mentioned, the right to do so, within the limitations mentioned in those cases, is lodged with the Legislature of this State.

This precise question has not been before this or any other court, so far as we are informed, though it has been disposed of adversely to the contention of the appellant by the Public Service Commissions of the States of Pennsylvania and New York in the cases of *Chambersburg, etc., Rwy. Co.* v. *Hardman,* Public Utilities Reports, 1921 C, 628, and *In Re Engelke,* Public Utilities Reports, 1922 C, 71.

As we find no error in the court's ruling in sustaining the demurrer to the bill and in dismissing it, we will affirm the order appealed from.

*Order affirmed, with costs.*