# SUPERIOR COURT

Newport Electric Corp.
vs.
William M. Oakley   Eq. No. 2041
doing business as
The Overland Limited

RESCRIPT
December 8, 1924.

BARROWS, J. Heard on prayer for a preliminary injunction to restrain respondent from operating a motor bus for the transportation of passengers over Rhode Island public highways forming a portion of a route from Newport, Rhode Island, to Fall River, Massachusetts.

Complainant is the holder of a franchise to operate a street railway company. It has also received permission to operate public motor vehicles under General Laws of 1923, Chapter 254.

The jurisdiction of equity is not open to question.

6 Pomeroy 583;

Memphis St. Ry. Co. vs. Rapid Transit Co., Tenn., 179 S. Wn. 635;

Puget Sound Traction, Light and and Power Co. vs J. H. Grassmeyer, Washington, 173 Pac. 504.

Complainant has complied with all rules and regulations of the Public Utilities Commission governing common carriers. Its approved routes include the one referred to in the first paragraph.

Respondent, a citizen and resident of Fall River, operates a motor bus as a common carrier of passengers between the Perry House at Newport and Kresge's corner, so called, at Fall River, on a continuous trip over the approved route for complainant. It neither receives nor discharges passengers at other than the terminal points. All parties agree that the transportation of passengers by respondent is interstate commerce.

Respondent's buses are registered as motor vehicles and his drivers licensed under General Laws 1923, Chap. 98, entitled "Of Motor Vehicles and the Operation Thereof." Two stretches of road recently built and constituting a portion of the route travelled by respondent have received substantial monetary aid from the United States under the Federal High-Act. This act was one to provide United States aid to states in the construction of post roads. It specifies certain kinds of construction and method of state and federal co-operation but makes no provision as to the use of the road except that all roads constructed under the act shall be free from tolls of all kinds. The facts before us in the present case show no attempt by the State of Rhode Island to exact any toll for the use of its roads.

Respondent has done nothing to comply with Chapter 254 entitled: "Of Public Service Motor Vehicles Operating Over Fixed Routes." This chapter places motor bus transportation under the rules and regulations of the Public Utilities Commission as to routes, fares, speed, schedules, continuity of service, convenience and safety of passengers and public. It provides that no owner shall operate a bus without a certificate from the Utilities Commission, that public convenience and necessity require its operation. The certificate fixes the route, the number of passengers to be carried at one time, and describes the service to be furnished. It provides that no such certificate shall be issued to a person not a citizen resident of Rhode Island. After a certificate is granted, the lighting, safety and sanitary conditions, and the licensing of operators and registration of the vehicles, is under the jurisdiction of the state board of public roads. There is a further provision in the act that the holder of such a certificate shall file a bond with the general treasurer to pay after judgment for any injury done to persons or property by operating busses.

Respondent's defence is, first, that Chapter 254 has no application to motor vehicles operating in Rhode Island when engaged solely in interstate commerce. Second, that if Chapter 254 be construed to cover such vehicles then that portion of Section 3 of Chapter 254 wherein non-residents are forbidden the privilege of receiving a license to operate a motor bus service is contrary to the provisions of the United States statutes giving to Congress the exclusive power to regulate commerce among the several states (Art. 1, Sec. 8, Par. 3), and that as a consequence of such invalidity no attempt by respondent to comply with Chapter 254 or any part thereof is or can be required.

Complainant's first position seems to us deducible only from the section of the statute forbidding the issuance of a certificate to a non-resident. We can not well conceive any valid reason for forbidding the granting of

such a certificate merely because of non-residence to one who is engaged in interstate commerce. Excluding from the state one engaged in interstate commerce has been held invalid. See cases cited at page 401 of Minnesota Rate Cases, 230 U. S. 352. The law being settled that no state can exclude from its limits corporations or others engaged in interstate commerce except for valid reasons, such as will be mentioned later, respondent seeks to deduce the proposition that the legislature did not intend by Chapter 254 to in any way apply to persons engaged solely in interstate commerce. An examination of the entire chapter discloses no such limitation in its terms. It rather indicates to us the intention of the legislature that Chapter 254 should include all vehicles operating as common carriers on the public highways of Rhode Island. The reasons calling for a certificate of public convenience and necessity, the giving of a bond, the fixing of routes to be travelled, the number of passengers to be carried at one time, the service furnished and the subjecting of the bus owners to reasonable regulations as to speed, and so forth, as enunciated by the Public Utilities Commission, seem just as great whether the person subjected thereto be engaged in interstate or intrastate business. We are not called upon to so delimit Chap. 254 to make it constitutional. If the provision relative to non-residents is invalid yet some of the regulations are not undue restrictions on interstate commerce. Their basis is clearly public safety, welfare and necessity. Bush & Sons Co. vs. Malloy, 123 Atl. 61, Md. 1923, so construes a similar Maryland statute. The inclusion in the act of section 12 that any portion which might be invalid should not affect valid portions of the act rather confirms our view that the act is intended to cover all kinds of motor bus transportation. We conclude, therefore that Chapter 254 applies to motor bus transportation on Rhode Island highways whether the persons are engaged in interstate or intrastate commerce.

The second question then is whether Chapter 254, wholly or in part, is in conflict with the United States Constitution.

The constitutionality of a statute should be sustained unless it appears to be invalid beyond a reasonable doubt.

Fritz vs. Presbrey, 44 R. I. 212.

The commerce clause of the Federal Constitution has been the subject of much litigaiton and some fine distinctions have been drawn. There are certain principles, however, which seem clear. Interstate commerce is under the exclusive control of Congress and the control thereof is not a power that has been left to the state until there shall be further action on the part of Congress. "Freedom from interference on the part of the states is not confined to a simple prohibition of laws impairing it (interstate commerce) but extends to interference by any ultimate organ.

Kansas Southern Ry. vs. Kaw Valley District, 233 U. S. 78.

No state can levy a direct tax on interstate commerce nor subject it to unreasonable demands.

Barrett vs| N. Y., 232 U. S. 14.

Nor under any guise impose direct burdens upon interstate commerce; nor prohibit interstate trade in legitimate articles of commerce.

Minnesota Rate Cases, 230 U. S. 352 at 400 and 401.

If the commerce to be regulated is of such a nature that if regulated at all it can be done successfully only by a single authority, the states can not act. If Congress has enacted legislation upon a specific matter of interstate commerce, no state may enact regulations which conflict with or defeat the Federal regulations. If Congress has not enacted regulations

the states, under their police power, may enact protective legislation even though interstate commerce be indirectly affected. Matters of the latter type are such as should not remain uncontrolled and where their regulation must vary according to local conditions.

Minnesota Rates Cases, at 402.

In the present case Congress has enacted no legislation regarding interstate commerce as carried on by motor busses in transporting passengers from one state to another over public highways. This distinctly is a field that ought not to remain unregulated and the regulation necessarily must vary according to local conditions. It is open to the states therefore, to enact suitable and reasonable laws for public health, safety and welfare, even though interstate commerce be indirectly affected. Control of motor vehicles on highways in view of the constant danger to the public is a proper subject of police regulation. See Hendricks vs. Maryland 235 U. S. 610. For a case where some regulations were reasonable and proper and others unreasonable.

South Covington vs. Covington, 235 U. S. 537.

The right to prescribe rates for ferries crossing from New York to New Jersey and not part of a continuous transportation system was sustained in Port Richmond Ferry Co. vs. Hudson, 234 U. S. 317, although an act charging a license fee for the privilege of operating a ferry was held void at the same time in Sault Ste. Marie vs. International Transit Co., 234 U. S. 233. The Court says in the latter case, at page 239: "The question is not as to validity of a mere police regulation governing the manner of conducting business in order to insure safety and the public convenience," citing the Port Richmond case. In the Port Richmond case the Court says, at page 331: "Ferries such as are involved in the present case are simply a means of transit from shore to shore." The head note of the Port Richmond, 234 U. S. 317 case, which fairly interprets the decision, reads in part at page 317: "Questions in respect to ferries such as the one involved in this case generally imply transportation for a short distance, generally between two specified points, unrelated to other transportation, thus presenting a situation essentially local and requiring regulation according to local conditions." The case now before us appears entirely similar. The bus is merely a means of transit from Fall River to Newport. State regulations regarding the use of its public highways and the protection of its citizens thereon are distinctly within its police power.

Christy vs. Elliott, 216 Ill. 31 and 39.

If interstate business by ferry is subject to regulation such as was made in the Port Richmond Ferry case, we see not reason why regulations made in the interest of preserving the roadbed of a public highway, preventing congestion, protecting its citizens using the road, providing convenient and necessary means of transportation, are not within the power of the state, and this entirely apart from the question whether the right to use a public highway is a right belonging to anyone or a privilege to be granted to those complying with the conditions imposed.

That the use of a public highway is a privilege and not a right is definitely decided in Rhode Island.

Gizzarelli vs. Presbrey et al., 117 Atl. 359.

In that case, however, no question of interstate commerce was involved.

Compare also Railroad vs. Maryland, 21 Wallace 456.

Perhaps the rule that the state may impose any condition as to the use of a public highway applies whether or not the person be engaged in interstate commerce, but in view of the language at the bottom of page 470 in

Railroad vs. Maryland, supra, we do not believe these conditions may create invidious distinctions between residents and non-residents.

Respondent concedes that the state may require a license to operate and registration of the motor vehicle.

Hendrick vs. Maryland, 235 U. S. 610.

Kane vs. New Jersey, 242 U. S. 160.

Camos Stage Co., Inc. vs Kozer, 104 Ore. 600 (1922).

Respondent has paid no attention to Chapter 254 and claims not to be bound thereby, relying upon Commonwealth vs. O'Neill, 233 Mass. 535. That case held that a Pittsfield ordinance requiring a license from the board of aldermen to operate a jitney was not intended to apply to interstate transportation where the bus made a continuous non-stop trip from Pittsfield to Albany. The Court intimated that if it were this particular ordinance would be void. As an authority for respondent's claim it seems weak.

Respondent's utter neglect of Chapter 254, when taken with his admission of the constitutionality of some regulations, means that to support him we must find that all regulations of Chapter 254 are unreasonable restrictions or direct burdens on interstate commerce.

Respondent urges that refusing the issuance of a certificate to non-residents in invalid because it excludes respondent who is engaged in interstate business from carrying on his business in Rhode Island.

Crutcher vs Kentucky, 141 U. S. 47.

This, we have previously stated, we believe to be correct. Respondent urges also that the regulation as to number of passengers allowed in each bus is a burden on interstate commerce and refers to the South Covington vs Covington case, supra. He avers further that the practical operation of Chapter 254 is to require a license from one carrying on inter-

state commerce and as such is unconstitutional under the doctrine of Barrett vs. N. Y., supra.

We can not agree that Chapter 254 is an attempt to exact a license fee for carrying on respondent's business. but conceding that the first two of respondent's above objections are good, if other restrictions in the act are a reasonable exercise of the state's police power, respondent is not warranted in disregarding them totally. Such was the holding in the Covington case, supra.

See also Interstate Motor Transit Co. vs. Kuykendall, 284 Fed. 882, Washington (1922);

Liberty Highway Co. vs. Mich Pub. Util. Com. 294 Fed. 703.

Such also would be the effect of Sec. 12 of Chapter 254, separating the invalid from the valid provisions of said act and leaving the latter in force.

It seems to us that indicating public ways over which motor busses shall operate is a reasonable regulation even though it may affect interstate commerce in the form of motor bus transportation. The state has a very strong interest in the preservation of its roads, in the type and weight of vehicles and loads using its roadways and in the frequency of operation. The type of roadbeds needed is well known to be different according to the load to be carried. Probable congestion is another important factor. Public convenience and necessity seems to be a proper subject for state regulation.

The Covington restriction on passengers, which the Supreme court held unconstitutional, related to overcrowding. The present requirement as to passengers carried at one time has no connection with overcrowding. Its purpose seems to be to enable the Utilities Commission to estimate public convenience and necessity and perhaps know the burden that will be placed upon the road.

A full consideration of the case leads us to the opinion that the statute is not clearly unreasonable and that the Court can not hold it in its entirely an indirect burden or interstate commerce. We believe that some of its provisions are reasonable regulations of the use of the public highways of this state. The Michigan statute in Liberty Highway case, supra, was, as regards making the carrier subjects to the Utilities Commission and the giving of a bond, similar to our own.

See also Buck vs Kuykendall, 295 Fed. 97, Washington, where complainont was refused a certificate of public convenience. In this case the Court held that federal aid in the construction of the highway adds nothing to the rights of the person engaged in interstate commerce as to its use.

See People of Ill. vs. Barbuas, not yet reported, a copy of which was furnished to the Court. (Certificate of convenience refused.)

Bush & Sons Co. vs. Malloy, 123 Atl. 61, Maryland (1923).

The injunction should issue.

For Complainant: Sheffield & Harvey.

For Respondent: William Williams.