## SOUTHERN PAC. CO. v. PETERSON, Atty. Gen. of Arizona.

## ATCHISON, T. & S. F. RY. CO. v. SAME.

### Nos. 196, 195.

District Court, D. Arizona.
July 7, 1930.

Alex B. Baker and Louis B. Whitney, both of Phœnix, Ariz. (Guy V. Shoup and Henly C. Booth, both of San Francisco, Cal., of counsel), for plaintiff Southern Pac. Company.

L. H. Chalmers, H. M. Fennemore, and Thomas G. Nairn, all of Phœnix, Ariz., and Robert Brennan, of Los Angeles, Cal. (E. E. McInnis and H. W. Davis, both of Chicago, Ill., of counsel), for plaintiff Atchison, T. & S. F. Ry. Co.

K. Berry Peterson, Atty. Gen. of Arizona, Charles L. Strouss, Asst. Atty. Gen. of Arizona, and Donald R. Richberg, Sp. Asst. Atty. Gen. of Illinois, for defendant.

JACOBS, District Judge.

These suits were commenced by the plaintiffs in the Phœnix division of the United States District Court of the District of Arizona. In each case, the plaintiff seeks to permanently enjoin the Attorney General of the State of Arizona from enforcing what is known as the Arizona Train Limit Law approved by the Governor on May 16, 1912, and also seeks temporary injunction. This law makes it unlawful for any railroad company in the state of Arizona to operate any passenger train consisting of more than fourteen cars and any freight train consisting of more than seventy freight cars, exclusive of

caboose, over its road or any portion thereof, and provides for a penalty of not less than $100 nor more than $1,000 fine for each offense. The cause of action and the relief sought in each case being the same, upon filing of the bills, an order was entered by the trial court consolidating the cases and as they come within the provisions of section 266 of the Judicial Code (28 USCA § 380) the judge of the District Court called to his assistance Hon. Curtis D. Wilbur, United States Circuit Judge, and Hon. Adolphus F. St. Sure, United States District Judge, of the Ninth Circuit, at San Francisco, Cal.

The defendants filed answers and motions to dismiss, and, upon stipulation of all parties, the hearing of the applications for a temporary injunction and the motions to dismiss were set down for September 30, 1929, at San Francisco, Cal.

It appears from the bills that plaintiffs are operating transcontinental railroads from points in the state of California through the state of Arizona to Eastern States. That the bulk of the traffic, both freight and passenger, is interstate. That Arizona is the only state wherein any train limit law is in force.

That transcontinental freight trains leaving points in California frequently consist of from 80 to 160 cars. These trains are hauled to a division point west of and nearest the western boundary of Arizona, where they are broken up into shorter trains of seventy cars or less, to comply with the Arizona Train Limit Law; additional train and engine crews provided, then hauled through the state of Arizona to a division point east of and nearest the eastern boundary of the state, where the short trains are again coupled up into one long train, which continues on its transcontinental journey. The same practice exists as to west-bound transcontinental traffic.

Plaintiffs claim that this practice, which is made necessary in order to comply with the Arizona Train Limit Law, causes great delay in the handling and movement of their interstate traffic, both passenger and freight, including perishable food products, and necessitates the expenditure, between both companies, of an additional overhead cost of operation of about $1,000,000 annually. That the Arizona Train Limit Law is void, being an unlawful attempt to regulate interstate commerce, imposes an undue and unreasonable burden thereon, is in conflict with the Interstate Commerce Act and related acts, deprives plaintiffs of their property without due process of law, and denies the plaintiffs equal protection of the law, contrary to the

Fourteenth Amendment to the Constitution of the United States. That Congress, under power conferred by the Constitution, having entered the field of legislation involved herein, the state of Arizona has thereby been deprived of the right to exercise its police power over the subject.

The motions to dismiss challenge the jurisdiction of the court upon the grounds: The bills fail to state a case or controversy and merely seek to obtain a declaratory judgment upon the validity of a state statute; that plaintiffs have not exhausted their remedies provided by the laws of Arizona; that the suits are against the state of Arizona by a citizen of another state in violation of the Eleventh Amendment to the Constitution; that defendant has not threatened and is not about to commence proceedings to enforce the statute against the plaintiffs; that there is want of equity, in that plaintiffs seek to restrain the enforcement of a penal statute said to be unconstitutional without showing (a) the institution or threat of any proceeding to enforce the law, (b) any injury to property rights actual or threatened, (c) lack of an adequate remedy at law, (d) existence or threat of any great, immediate, and irreparable injury, or (e) the necessity for or propriety of any equitable relief.

The answers admit the existence of the Arizona statute; deny that the statute is void on the ground that a limitation of train lengths is not a lawful subject of state legislation and is subject to exclusive legislation of Congress; and allege no information concerning other material allegations of the bills, and on that ground deny the same. They also allege that, if the plaintiffs insist upon the right to ignore the Arizona law and the defendant, after investigation, is of the opinion that the said law is not invalid, he will prosecute a test case in the state court and consent that all other proceedings except the test case be stayed until the validity or invalidity of the law is determined by the state court.

The applications for temporary injunction and the motions to dismiss were heard at San Francisco, Cal., on September 30 and October 1, 1929, and the court at the conclusion of the argument, owing to the state of the pleadings, denied the motions for temporary injunction and took under advisement the motions to dismiss.

It is unnecessary to comment at length on many of the questions raised by the defendant, as the law is well settled by judicial decisions against his contentions and a citation of authorities would lengthen this opin-

ion unnecessarily. Suffice it to say that the bills do not merely seek to obtain a declaratory judgment upon the validity of the state statute; that plaintiffs are not relegated to a proceeding under the Declaratory Judgment Act of Arizona (Rev. Code 1928, § 4385 et seq.); that the suits are not against the state of Arizona by a citizen of another state in violation of the Eleventh Amendment to the Constitution; that there is a showing of injury to property rights both actual and threatened; there is no adequate remedy at law; and that there is a showing of necessity for equitable relief.

Defendant contends that there is no actual controversy between plaintiffs and defendant because the bills do not allege that the defendant has commenced or has threatened and is about to commence proceedings in the state court to enforce against plaintiffs the statute alleged to be unconstitutional; and that these suits were prematurely brought; that plaintiffs, in order to test the constitutionality of this law, should be compelled to violate it and test the validity of the act in the state court.

The statute, after imposing the penalty, provides: "And such penalties shall be recovered, and suits therefor brought by the Attorney General, or under his direction, in the name of the state of Arizona, in any county through which said railway may be run or operated. * * *" Rev. Code Ariz. 1928, § 647. This is a mandatory provision, and it is fair to assume that the Attorney General will discharge the duties of his office, especially when those duties are so clearly set forth in a statute of the state.

The decisions in the cases of Pennsylvania v. West Virginia and Ohio v. West Virginia, companion cases, 262 U. S. 553, 43 S. Ct. 658, 663, 67 L. Ed. 1117, 32 A. L. R. 300, settle this question. These were suits to restrain the enforcement of a statute of West Virginia, providing that persons engaged in furnishing natural gas must first furnish to domestic consumers all they were willing to pay for before transporting it by pipe line to other states. It also authorized the state corporation commission to order a dealer, who had a surplus, to furnish another dealer, who was short, enough gas to supply his domestic consumers, upon a proceeding brought before the commission for that purpose. A failure or refusal to comply with the provisions of the statute is punishable by fine and each day's failure or refusal is made a separate offense. The suits were brought a few days after the statute became effective and

before any order had been made by the commission, the defendant contending that the suits were brought prematurely. In answering this objection, the Supreme Court said: "But this does not prove that the suits were premature. Of course they were not so, if it otherwise appeared that the act certainly would operate as the complainant states apprehended it would. One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." In the instant cases, there can be no doubt that the injury is certainly impending. These suits were not prematurely brought.

It is alleged by plaintiffs that Congress has entered the field of legislation here involved, in the passage of the Transportation Act of February 28, 1920 (41 Stat. 456), and that the police power of the state was thereby suspended and the Train Limit Law of Arizona at once became inoperative and void.

In the case of Missouri Pacific R. R. Co. v. Hal Norwood, Attorney General of the State of Arkansas, in a three-judge decision of the District Court of Arkansas, the language of the acts of Congress relied upon to sustain this contention was construed adversely to the plaintiffs' claim. This is a recent decision, as yet unreported. It is a well-reasoned case and we accept it as an authority upon this question.

In these cases, there is another issue tendered, however. It is alleged in the bill that this statute imposes undue and unreasonable burdens on interstate commerce, in violation of the commerce clause of the Constitution of the United States (article 1, § 8, cl. 3); that a compliance with the Arizona Train Limit law by plaintiffs causes great delay in the handling and moving of their interstate traffic, both passenger and freight, including perishable food products, and necessitates the expenditure, between both companies, of an additional overhead cost of operation of about $1,000,000 annually; and that the movement of interstate traffic is seriously hindered and hampered by a compliance with this law.

In construing a statute of North Dakota regulating the buying of grain, in which the plaintiff contended that the statute was an unlawful regulation of interstate commerce, it was said:

"It is contended that these regulations may stand upon the principles recognized in decisions of this court which permit the State to make local laws under its police power in the interest of the welfare of its people, which

are valid although effecting interstate commerce, and may stand, at least until Congress takes possession of the field under its superior authority to regulate commerce among the States. This principle has no application where the State passes beyond the exercise of its legitimate authority, and undertakes to regulate. interstate commerce by imposing burdens upon it." Lemke v. Farmers' Grain Co., 258 U. S. 58–59, 42 S. Ct. 244, 247, 66 L. Ed. 458.

In the case of Kansas City Southern Ry. Co. v. Kaw Valley District, 233 U. S. 78, 79, 34 S. Ct. 564, 565, 58 L. Ed. 857, it is said:

"The freedom from interference on the part of the states is not confined to a simple prohibition of laws impairing it, but extends to interference by any ultimate organ. * * * It would seem that the same principle applies to railroads under the commerce clause of the Constitution, especially if taken in connection with a somewhat similar statute now Rev. Stat. § 5258 [45 USCA § 84], and so it is held. * * *

"The decisions also show that a state cannot avoid the operation of this rule by simply invoking the convenient apologetics of the police power. It repeatedly has been said or implied that a direct interference with commerce among the states could not be justified in this way. 'The state can do nothing which will directly burden or impede the interstate traffic of the company, or impair the usefulness of its facilities for such traffic.' "

The state of Illinois passed a statute requiring the railroad companies to stop their trains at county seats long enough to receive and let off passengers with safety. The observance of this statute would require the railroad company to detour its trains about three miles from the interstate route. In passing on the effect of this statute, the Supreme Court said:

"This court is unanimously of the opinion that this requirement is an unconstitutional hinderance and obstruction of interstate commerce and of the passage of the mails of the United States." Illinois Central R. R. Co. v. Illinois, 163 U. S. 142–153, 16 S. Ct. 1096, 1100, 41 L. Ed. 107.

If, as alleged in the bills, the interstate traffic over the plaintiffs' lines is hindered, delayed, and burdened to such an extent as to amount to an unlawful interference with or regulation of interstate commerce, then a cause of action exists calling for equitable relief. These allegations of the bills are specifically denied by the defendant. An issue is thereby tendered and a case presented of which the federal court has jurisdiction.

The motions to dismiss are therefore denied. The plaintiffs will be permitted to renew their motions for temporary injunction should it become necessary in order to protect them from numerous prosecutions in the state courts during the pendency of these suits.