GREAT NORTHERN RAILWAY COM-
PANY, a corporation; Northern Pacif-
ic Railway Company, a corporation;
Soo Line Railroad Company, a corpora-
tion; and Chicago, Milwaukee, St. Paul
and Pacific Railroad Company, a cor-
poration, Plaintiffs,

v.

Richard J. THOMPSON, Ben J. Wolf, and
Bruce Hagen, Commissioners of the
Public Service Commission of the State
of North Dakota, or their successors,
Defendants.

Civ. No. 824.

United States District Court
D. North Dakota,
Southwestern Division.

Oct. 24, 1969.

Joseph J. Nagle, Chicago, Ill., Barry
McGrath, St. Paul, Minn., Charles H.
Clay, Minneapolis, Minn., and Curtis H.
Berg, St. Paul, Minn., Nilles, Oehlert,
Hansen, Selbo & Magill, Frank J. Magill,
Fargo, N. D., of counsel, for plaintiffs.

Jack Stewart, Commerce Counsel, Spe-
cial Asst. Atty. Gen., Bismarck, N. D.,
for defendants.

Before VOGEL, Circuit Judge, REG-
ISTER, Chief District Judge, and DA-
VIES, District Judge.

REGISTER, Chief Judge.

By this action the Plaintiffs seek a
judicial determination declaring uncon-
stitutional Section 49–14–31 of the North
Dakota Century Code (enacted as Chap-
ter 321, Section 1, by the 1965 Legislative
Session of the State of North Dakota),
which reads as follows:

"49–14–31. *Requiring establishment
and maintenance of hold points.*—Any
railroad operating in the state of North
Dakota shall establish and maintain at
such locations within the state as may
be designated by the public service
commission, such hold points as may
be determined by the commission to be

necessary and in the public interest for the sampling of grain shipments originating within the state of North Dakota."

Plaintiffs further seek to enjoin, restrain, and declare null and void that certain order of the Public Service Commission of the State of North Dakota, dated September 23, 1966 (hereinafter referred to), which was purportedly issued by virtue of the provisions of that statute.

This three-judge Court was convened to hear and determine this action, pursuant to the provisions of 28 U.S.C.A. Sec. 2284(1). Subsequent to the execution and filing of a stipulation by parties hereto, the Plaintiffs (jointly) filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "on the ground that the records, files, pleadings and stipulation on file herein show that there is no genuine issue as to any material fact, and that plaintiffs are entitled to judgment as a matter of law." Pursuant to that stipulation, it is agreed that as a part of the record before this Court are the pleadings, transcript, briefs, Findings of Fact, Conclusions of Law and Order dated September 23, 1966, and Order of October 17, 1966, in North Dakota Public Service Commission Case No. 6477—which is the case giving rise to these proceedings. Upon the filing of final briefs, the parties agreed that this action be deemed to be finally submitted.

The constitutionality of the subject statute is challenged under Article I, Section 8, Clause 3 of the Constitution of the United States, generally referred to as the "Commerce Clause," which provides, inter alia, that:

"The Congress shall have Power * * *

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

The proceedings before the North Dakota Public Service Commission in the case designated No. 6477 were instituted pursuant to the provisions of Section 49–14–31, NDCC, and the North Dakota Public Service Commission's Findings of Fact, Conclusions of Law and Order of September 23, 1966 were issued and promulgated pursuant thereto.

Plaintiffs are individually and collectively common carriers of freight by railroad operating between points in the state of North Dakota, and between points in that state and points in the states of Minnesota, Michigan, Wisconsin, Illinois, Indiana, Missouri, Iowa, South Dakota, Montana, Idaho, Washington, Oregon, California, and the Canadian Provinces of British Columbia and Manitoba, and in connection with other carriers by railroad provide rail transportation between points on their lines and points on other railroads in the United States. Plaintiffs engage in both interstate and intrastate transportation of freight, including grain and other agricultural commodities and products.

Each of the Plaintiffs is a foreign corporation having its principal place of business outside of the State of North Dakota. The Defendants, individually and collectively, constitute the duly elected and acting members of the Public Service Commission of the State of North Dakota, and each of said Defendants concurred in the Commission's report, Findings of Fact, Conclusions of Law and Order dated September 23, 1966, in Case No. 6477. This is a civil action in which the amount in controversy exceeds Ten Thousand Dollars. Each of the Defendants is a citizen of the State of North Dakota. This Court has jurisdiction under Sections 1331, 1332, 2201, 2202, 2281 and 2284 of Title 28, United States Code Annotated.

On April 21, 1965, a group known as the Southeastern Grain Holding and Inspection Association filed applications with Defendants requesting that the cities of Hankinson and Wahpeton, North Dakota, be designated as hold points for sampling and inspecting grain. The applications were filed to invoke the provisions of Section 49–14–31, NDCC. Following the filing of these applications, the Defendants issued a notice of public hearing to be held at the city of Hankin-

son. This hearing was held, and thereafter the Defendants issued the order of September 23, 1966, requiring that with respect to grain shipments originating in North Dakota, Great Northern Railway Company and Soo Line Railroad Company publish tariff rules and regulations establishing hold points on their respective lines at Hankinson, North Dakota, and that the Great Northern Railway Company, Northern Pacific Railway Company, and Chicago, Milwaukee, St. Paul and Pacific Railroad Company publish tariff rules and regulations establishing hold points on their respective lines at Wahpeton, North Dakota, and specifying the time within which such rules and regulations were to be filed. Thereafter, by appropriate petition the Plaintiffs requested Defendants to rehear, reconsider, and receive oral argument on said order and postpone the effective date thereof pending such rehearing and reconsideration. This petition was denied by order dated October 17, 1966, and it appears to this Court (and the parties have so stipulated) that Plaintiffs have fully exhausted their administrative remedies before the Defendants, acting as the North Dakota Public Service Commission. Subsequent to the institution of this action the parties stipulated to a postponement of the effective date of the September 23 order, pending final determination by this Court in this proceeding.

The parties have stipulated "That the principal and primary purpose of this action is to challenge and test the constitutionality of * * *" the subject statute. Plaintiffs seek a declaratory judgment accordingly, and premise their contention that a substantial question of unconstitutionality is here presented not only on the proposition that the statute is manifestly repugnant to the Commerce Clause, but also that involved herein is the alleged application of the supremacy clause, on the theory that the federal statutes commonly referred to as the Interstate Commerce Act (49 U.S.C.A. Sec. 1 et seq.) have preempted and occupied the entire field of interstate regulation of interstate commerce, including the establishment of grain inspection and hold points. The greater portion of the briefs of the respective parties is devoted to these contentions involving the constitutionality of Section 49–14–31, NDCC. However, this Court is satisfied that it need not and should not consider this issue for the reason that a determination of the validity of the Commission's challenged order is dispositive of the matter.

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality * * * unless such adjudication is unavoidable." Spector Motor Co. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101.

"It is the duty of the Federal courts to avoid unnecessary decision of constitutional questions." Guy v. Rolvaag, D.C., 233 F.Supp. 301, 304.

It is clear that, on its face, the involved statute is not restricted to grain shipments moving entirely in intrastate commerce within the State of North Dakota, but is applicable to all grain shipments originating within the state, including such shipments originating in the state which ultimately move in interstate commerce. It has been stipulated that such latter shipments are in excess of 90% of all shipments of grain originating within this state. A grain hold point is a point on a railroad track where a grain car is held to enable an inspector to extract samples of its contents by certain standard methods for the purpose of determining the grade and protein content of the grain.

The primary movement of grains grown in North Dakota is from west to east and, other than that portion that is transported by the motor carrier industry, all of such grains are carried by the Plaintiffs. All of the Plaintiff railroads pass through the state of North Dakota into the state of Minnesota, and all interstate shipments terminate at markets either within the state of Minnesota or other states. A large percentage of grains grown in North Dakota is

transported through Wahpeton, North Dakota, and Hankinson, North Dakota, into other states. These two points are intermediate between origin and destination of the grain shipments. We take judicial notice of the geographical location of these two cities, both of which are in the southeastern corner of North Dakota. Wahpeton is on the eastern boundary, separated from Breckenridge, Minnesota, by the Red River of the North, and is about 25 miles north of the North Dakota-South Dakota boundary line. Hankinson is approximately thirty miles west of the North Dakota-Minnesota boundary, and approximately ten miles north of the North Dakota-South Dakota boundary.

Certain facts should be noted with reference to the order of the Commission with which we are here concerned. It does not involve and bears no reasonable relationship to the public health or safety, or other general public interest. In its practical operation it neither applies to all grain moving in intrastate and interstate commerce by railroad through the two cities involved, nor to all grain moving in interstate commerce by railroad through those cities. In practical operation its application would be limited or restricted to those shipments of grain moving in interstate commerce on the Plaintiffs' railroads through those two cities, as to which the shippers chose to have their grain sampled and inspected at such points. The only necessarily interested party would be the North Dakota shipper or consignor. This would not generally be the grain producer, but rather the country elevator to which the producer had sold his grain. For an excellent discussion concerning the generally well-known and customary manner in which grain in North Dakota is disposed of by producer to elevator to terminal market, see: Lemke v. Farmers Grain Company, 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458, and Shafer v. Farmers' Grain Company, 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909. The only other potentially interested party would be the ultimate consignee. The primary asserted purpose of a sampling and inspection at one of the designated points and report of the results thereof to the consignor is to improve the bargaining position of the consignor and hopefully to enable him to secure a better price for his grain. Aside from the potential economic benefit to the individual consignor who decides to exercise this choice, virtually the only possible public economic interest that might benefit therefrom would be essentially local in character—to the respective cities involved, or to the areas immediately surrounding the same, where establishment of industries related to grain storage or processing might result.

The record discloses that all of the Plaintiffs herein maintain facilities for the sampling and inspection of grain moving in interstate commerce at points not far distant from Wahpeton and Hankinson. For example, the record reveals that the Soo Line Railroad maintains such a hold point at Glenwood, Minnesota, which, according to the record, is approximately eighty miles east of Hankinson, North Dakota. From the record it is also clear that compliance with the subject order would entail the expenditure by each of the Plaintiffs of substantial amounts of money for construction (which, in effect, would constitute added capital investment), and increased costs of maintenance and operation thereof, and that such facilities would be, essentially, unnecessary and a duplication of existing facilities.

Furthermore, in inception and in practical operation, such Order was aimed at and was applicable exclusively to shipments of grain which were already moving in interstate commerce. The requirements of this Order seek to, and compliance therewith would, directly impede and interfere with the free movement of this specific interstate commerce, by requiring interstate trains containing one or more cars of such grain whose consignor made the request to stop at the designated hold point. See: Kansas City Southern Railway Company v. Kaw Valley Drainage District, 233 U.S. 75, 79, 34

S.Ct. 564, 58 L.Ed. 857. The parties have stipulated that the *only* substantial evidence received at the hearing in support of this Order (and, hence, the only evidence constituting the basis therefor) related to *grain shipments moving in interstate commerce.* It is well established that a temporary stoppage within the state, such as would be here involved, of shipments moving in interstate commerce would not alter or change its character. State of Texas v. Anderson, Clayton & Co. et al. (5 Cir.), 92 F.2d 104, writ of error den., 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578; Great Northern Railway Co. v. Thompson, D.C., 222 F.Supp. 573; Guy v. Rolvaag, supra. That this general rule was either not understood or was misinterpreted by the representative of the Southeastern Grain Holding and Inspection Association at the time of the commencement of the hearing on its applications, is apparent from his following statements (Tr. p. 9):

"I can see no conflict here as far as the Federal and State Government is concerned. We are asking for control of grain before it gets into interstate commerce, while it is yet within the State of North Dakota going from point of origin from the State of North Dakota to another point in North Dakota and before it crosses the border lines in interstate commerce."

The case of Southern Pacific Company v. Railroad Commission of California et al., D.C., 10 F.Supp. 918, was a suit in equity in which the plaintiff sought to enjoin the enforcement of an order of the State Railroad Commission of the State of California, as being violative of the commerce clause of the Constitution. The Court therein appropriately stated (p. 921):

"In determining the validity of a statute, courts are not bound by the form. It is their duty to look at the substance. The order is to be determined in the light of its effect *upon* interstate commerce."

and, at page 924:

"While it (the order) purports only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business through his entire voyage."

■ While there are many subjects which are within the regulatory powers of the State, even though the exercise of those powers affect interstate commerce, it is well established that state action that constitutes an undue or discriminatory burden upon such commerce is prohibited by federal constitutional provisions.

"As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only *undue or discriminatory ones,* are forbidden." [Emphasis added.] Nippert v. Richmond, 327 U.S. 416, 425, 66 S.Ct. 586, 590, 90 L.Ed. 760.

Above statement quoted with approval in Breard v. Alexandria, 341 U.S. 622, 634, 71 S.Ct. 920, 95 L.Ed. 1233. Also see: Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

"It repeatedly has been said or implied that a direct interference with commerce among the states could not be justified in this way." Kansas City Southern Railway Company v. Kaw Valley Drainage District, supra.

On the record before us, we are convinced that effective compliance by the Plaintiffs with the subject Order would constitute an unreasonable and discriminatory burden on and interference with interstate commerce, and that the Plaintiffs are entitled as a matter of law to the injunctive relief demanded.

Counsel for Plaintiffs will submit appropriate Order and Judgment in conformity herewith.