**TOLEDO, P. & W. R. R. v. BROTHERHOOD OF RAILROAD TRAINMEN, ENTERPRISE LODGE NO. 27, et al.**

No. 7951.

Circuit Court of Appeals, Seventh Circuit.

Dec. 16, 1942.

Rehearing Denied Jan. 15, 1943.

John E. Cassidy, of Peoria, Ill., for appellant.

John M. Elliott and Clarence W. Heyl, both of Peoria, Ill., for appellee.

Before SPARKS, and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendants appeal from an order enjoining them from interfering with plaintiff "by violence or threats of violence" in the transportation of interstate freight and in handling goods essential to the prosecution of the war; assaulting or attempting to injure by violence any employee of plaintiff; interrupting or obstructing by force and violence movement of interstate shipments over plaintiff's lines, and committing various acts of violence condemned as destructive of or injurious to the persons of employees and officers of plaintiff and to plaintiff's property.

Plaintiff is an interstate carrier operating a railroad between Effner, Indiana and Keokuk, Iowa, through Illinois. Much of its freight is carried interstate, and a substantial portion constitutes goods to be used in the war effort.

In October, 1940, employees of plaintiff selected defendant unions to represent them under the provisions of the Railway Labor Act. 45 U.S.C.A. § 152(4). Following this plaintiff and the labor organizations submitted counterproposals for settlement of working conditions and rates of pay and negotiations were carried on, with the aid of the National Mediation Board, over a considerable period of time. After the parties failed to agree, plaintiff's request that the Brotherhoods suggest rates of pay under which they would accept plaintiff's proposed rules and working conditions was refused. On November 7, 1941, at a joint conference the mediator handed

the parties arbitration proposals which each declined. The services of the Mediation Board were then terminated in accord with the act, November 21, 1941. Plaintiff then suggested that an impartial committee be appointed to examine the dispute and that an emergency board be appointed by the President. Nothing was done about either suggestion.

Defendants called a strike for December 9, 1941, but it was indefinitely postponed at the request of the Mediation Board. Conferences again occurred between the parties, terminating on December 21, 1941, when plaintiff gave notice that its proposed rates of pay, rules and working conditions were to be effective at midnight, December 29, 1941. On December 17 and 28 plaintiff received telegrams from the Mediation Board urging arbitration, but plaintiff refused. A strike was called at midnight, December 29, 1941.

Although the evidence is somewhat conflicting, it discloses continued violence on the part of the strikers. Plaintiff's workers were assaulted, moving trains stoned, trains derailed, windows and lights on the locomotives and cabooses broken, trains stopped, and many threats made against plaintiff's employees. On one occasion a bottle of inflammable liquid was thrown into the engine cab of a moving train, causing a fire and injuring the occupants.

On January 3, 1942, plaintiff filed complaint against defendants seeking to enjoin their acts, and the District Court issued a temporary restraining order. Within five days plaintiff began to present its evidence in support of its application for the temporary injunction. Due to the number of witnesses and voluminous testimony, the court extended the temporary restraining order on January 8, 1942 and again on January 16. After completion of the evidence, on January 19, 1942, the court issued a temporary injunction.

Defendants seek reversal on five grounds: (1) The court was without authority to extend the temporary restraining order beyond five days; (2) No federal question being involved, the District Court was without jurisdiction; (3) The evidence was insufficient to show that the public officers were unwilling or unable to furnish adequate protection for plaintiff's property; (4) Plaintiff failed to make every reasonable effort to settle the dispute as required under the Railway Labor Act and the Norris-La Guardia Act; (5) The evidence was insufficient to show that defendants had participated in or ratified any act of violence against or interference with plaintiff.

Section 7 of the Norris-La Guardia Act, 29 U.S.C.A. § 107, is in part: "A complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days."

Defendant contends that, since, under this language a restraining order may be effective for five days only, the two extensions were beyond the court's jurisdiction.

■ The obvious purpose of the five-day limit was to prevent restraint without a hearing on the question whether substantial and irreparable injury has been done to the employer, for so long a time as to affect materially the effort of the striking employees. But to hold that the provision denies the power of the court to continue the restraining order more than five days regardless of whether the hearing on application for temporary injunction is completed, would completely destroy the purpose of the legislation. There is ordinarily no reason why such hearing can not be begun within five days, but not infrequently it can not be completed within that time. Here, it required approximately two weeks. Obviously if the order had been dissolved within five days, there would have been a period of over a week during which defendants' acts, if unrestrained, might well have caused further irreparable damage. The purpose was to prevent possibility of irreparable damage and to preserve the existing status until an early hearing would determine whether a temporary injunction should be issued.

■ Furthermore if the order for a temporary injunction granted by the District Court was proper, any error in extending the restraining order is not before this court, for that order merged in the injunction. City of Reno v. Sierra

Pacific Power Co., 9 Cir., 44 F.2d 281, 283. The question involved here is the propriety of the injunction. If it was proper, the restraining order was proper. If it was improper, plaintiff's case fails and the propriety of the restraining order is of no importance.

Defendants question the jurisdiction of the District Court. Under the Judicial Code, the District Court has original jurisdiction in controversies exceeding $3,000 which arise under the Constitution or laws of the United States, 28 U.S.C.A. 41 (1), and of all suits and proceedings arising under any law regulating commerce, 28 U.S.C.A. 41 (8). Since no diversity of citizenship is involved, the question depends upon whether the proceedings arise under the Constitution and laws of the United States, or, more narrowly, constitute a suit under any law regulating commerce. Plaintiff is a common carrier of freight by railroad in interstate commerce. It insists that it is subject to and entitled to protection under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.; the Railway Labor Act, 45 U.S.C.A. §§ 151–160 and the War Utilities Act, 50 U.S.C.A., §§ 101–105.

■■ The mere fact that Congress has paramount power to legislate in certain fields is not alone sufficient to confer jurisdiction. Thus the fact that a patent is involved will not result in federal jurisdiction if the real issue concerns merely title to the patent, for that is not a matter arising under a federal law. Laning v. National Ribbon & Carbon Co., 7 Cir., 125 F.2d 565. Similarly, if one of the parties is engaged in interstate commerce and subject to regulation under a federal statute, the court has no jurisdiction of matters concerned solely with a contract between the adverse parties. Louisville & N. Ry. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; State Auto Ins. Ass'n v. Parry, 8 Cir., 123 F.2d 243. To give rise to federal jurisdiction, the basis of the suit must be concerned with the validity, construction, enforcement or effect of the statute; anything less is insufficient. Shulthis v. McDougal, 225 U. S. 561, 32 S.Ct. 704, 56 L.Ed. 1205; Sharp v. Barnhart, 7 Cir., 117 F.2d 604; Stenger v. Stenger Broadcasting Corp., D.C.Pa., 28 F.Supp. 407; Partridge Lumber Co. v. Michigan Central Ry., 8 Cir., 26 F.2d 615; Peyton v. Railway Express, 5 Cir.,

124 F.2d 430; Postal Telegraph v. Nolan, D.C.Mont., 240 F. 754.

■ We well know that the mere fact that Interstate Commerce is involved and may be affected, is not sufficient to justify jurisdiction of a private suit seeking protection of such commerce. Sharp v. Barnhart, 7 Cir., 117 F.2d 604; Postal Telegraph v. Nolan, D.C.Mont., 240 F. 754. But if the suit directly concerns an Act of Congress a carrier may seek relief in a federal court. Thus, In re Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110, arose out of a labor dispute in which defendant railroads and employees refused to interchange traffic with plaintiff so long as the latter employed nonunion labor. The Commerce Act provides that carriers must provide reasonable facilities for such interchange. The court held that the acts of defendants directly affected a right and duty of plaintiff arising from the Commerc Act and that the Circuit Court had jurisdiction, since it was the duty of all railroads to furnish reasonable facilities for the interchange of interstate traffic. Toledo, A., A. & N. M. Ry. v. Pennsylvania Co., C.C.Ohio, 54 F. 730, 19 L.R.A. 387. See, also, Wabash Ry. v. Hannahan, C.C.Mo., 121 F. 563; Knudsen v. Benn, C.C.Minn., 123 F. 636; Stephens v. Ohio State Telephone Co., D.C.Ohio, 240 F. 759.

The Interstate Commerce Act includes no specific provision as to restraint of violent strikes against a carrier engaged in interstate commerce at the suit of the carrier. We are not concerned with the right of the United States to enjoin those who interfere with or obstruct interstate commerce, as in In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092, but with whether a private party may seek federal court aid to the same end. Our question then is whether plaintiff has rights and obligations under Federal Acts, the enjoyment and discharge of which defendants are preventing. If so a statute of the United States is directly involved and the District Court had jurisdiction.

It is, under Section 1(4) of the Interstate Commerce Act, the duty "of every common carrier subject to [the provisions of] this chapter engaged in the transportation of passengers or property to provide and furnish such transportation * * * to establish through routes * * * and to provide reasonable facilities for

operating through routes and to make reasonable rules and regulations with respect to the operation of through routes * * *"; under section 1(6), "to establish * * * facilities for transportation, the carrying of personal, sample, and excess baggage, and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property subject to the provisions of this chapter, which may be necessary or proper to secure the safe and prompt receipt, handling, transportation, and delivery of property subject to the provisions of this chapter * * *"; under section 1(4) "to provide and furnish transportation upon reasonable request therefor and to establish reasonable through routes with other such carriers, and * * * to provide reasonable facilities for operating such routes"; under section 1(11) "to furnish safe and adequate car service * * *"; under section 1(18) "* * * no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission, a certificate that the present or future public convenience and necessity permit such abandonment." And section 1(20) provides: "Any * * * abandonment contrary to the provision of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the commission, any commission or regulating body of the State or States affected, or any party in interest * * *."

Title 18 U.S.C. § 412a is as follows: "Whoever shall willfully derail, disable, or wreck any train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce by any railroad, or whoever shall willfully set fire to, or place any explosive substance on or near, or undermine any tunnel, bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance used in the operation of any such railroad in interstate or foreign commerce, or otherwise make any such tunnel, bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance unworkable or unusable or hazardous to work or use, with the intent to derail, disable, or wreck a train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce or whoever shall willfully attempt to do any of the aforesaid acts or things, shall be deemed guilty of a crime."

From these provisions and others it is clear that a carrier in interstate commerce is bound, not only to furnish carrying facilities for anyone desiring them, but to supply "necessary, proper, adequate and safe" facilities. During the course of violence such as occurred here the carrier is rendered unable to furnish such facilities. Thus, plaintiff's property was injured, goods carried endangered, a locomotive set on fire and plaintiff's trains delayed and even prevented from operating.

Congress has seen fit to impose certain duties upon a common carrier engaged in interstate commerce, and the failure to perform such duties subjects the carrier to liability. It can not be that Congress imposed duties, and yet intended that the carrier should be denied federal relief from interference with carrying out such duties. Congress having set up certain requirements which the carrier must meet, when others seek by violence to prevent it from meeting those statutory obligations, it should be permitted to seek protection in a court of equity of the sovereignty imposing the obligation. Wabash R. R. v. Hannahan, C. C.Mo., 121 F. 563, 573.

In the instant case, the acts complained of were so violent that plaintiff was forced to abandon temporarily its train service. Yet Section 1(18) and Section 1(20) specifically prohibit abandonment of operations. Since Congress has prohibited such cessation of activity in commerce, the actions of defendants in halting operations, immediately impaired plaintiff in its ability to comply with the federal act and to abide by the statutory prohibitions. Furthermore Congress has forbidden interference with commerce and made violent interference criminal. 18 U.S.C.A. § 409.

In suits arising under the constitutional laws of the United States concerning the words "Arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority," the statement has been made that the proceedings of the Constitutional Convention manifest "a settled purpose to in-

clude within the federal judicial jurisdiction all 'questions which involve the national peace and harmony,' and that the word 'questions' includes every issue capable of a judicial determination." King v. McLean Asylum of Massachusetts General Hospital, 1 Cir., 64 F. 331, 333, 339, 26 L.R.A. 784. A claim of the protection of a federal law, requiring its construction, or of a right or privilege given by a federal law makes a federal question. Richards v. Town of Rock Rapids, C.C., 31 F. 505; Iowa Loan & Trust Co. v. Fairweather, D. C., 252 F. 605.

In cases where a federal statute imposes upon a private party, duties and obligations to be performed, the courts quite generally have approved jurisdiction in the District Court of suits brought by such parties to prevent interference with the performance of their obligations under the federal statutes and under the commerce law. They have held that if interstate traffic is hindered, delayed and burdened to such extent as to amount to unlawful interference with such commerce, a cause of action exists calling for equitable relief. Southern Pac. Co. v. Peterson, D.C., 43 F.2d 198; Kentucky & I. Bridge Co. v. Louisville & N. R. Co., D.C., 37 F. 567, 2 L.R.A. 289; Ex parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110; Oregon R. & Navigation Co. v. Campbell, C.C., 173 F. 957; Glenwood Light, etc., Co. v. Mutual Light, etc., Co., 239 U.S. 121, 36 S.Ct. 30, 32, 60 L.Ed. 174; Stephens v. Ohio State Telephone Co., D.C., 240 F. 759; Carmichael v. Anderson, D.C., 14 F.2d 166.

Thus in Stephens v. Ohio State Telephone Co., D.C., 240 F. 759, 768, the court said: "The several sections of the Interstate Commerce Act * * * require telephone companies to afford all reasonable facilities for the transaction of business for which they are chartered and which they engage to carry on through their contracts, and subject them, as in case of other instrumentalities of interstate traffic, to heavy penalties for failure to comply with these obligations. As we read the statutes, the same law and procedure are applicable to them which safeguard public and private interests in the operation of any other business engaging in interstate commerce, and we find the jurisdiction of the federal courts over analogous controversies upheld by a long line of decisions touching so great a variety of phases of

dereliction that we may safely say we have here one belonging to the same category."

■ We conclude that the court had jurisdiction of the subject matter.

Defendants insist that the evidence was insufficient to show that public officers were unable or unwilling to furnish adequate protection for plaintiff's property.

Section 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107, provides that: "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute * * * except after findings of fact by the court, to the effect * * * (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

The evidence disclosed that plaintiff's workers were assaulted and injured, trains stopped and damaged, and that repeated acts of violence occurred. The sheriff of Peoria County testified that he could not protect plaintiff's line properly because of his inadequate force, and he and his deputies did nothing to prevent violence. The sheriff of Tazewell County had only four men to patrol the whole county and was doubtful as to the help he could give. When violence broke out in East Peoria, the Chief of Police was called upon for aid and, although the police station was only about five minutes distant from the scene of events, no help arrived until forty-five minutes after the damage had been effected. The president of plaintiff sent telegrams to the sheriffs of every county in which plaintiff operates, advising them that plaintiff's trains were being interfered with by acts of violence and requesting protection of its trains within each county. Some sheriffs failed to reply, others answered that they did not have the funds or means to give such protection, and only one sheriff replied that he would give such protection "as he could." Plaintiff's railroad extended across the entire width of Illinois, and a part of Iowa and Indiana, and the violence and threats of violence from striking employees were spread over the entire distance. Obviously a great number of police officers and extended cooperation by the public authorities were essential to adequate protection.

■ The District Court found that the public officers under duty to protect plaintiff were either unable or unwilling

to furnish adequate protection. Although some conflict appears, the evidence is sufficient to show inability or unwillingness of the public officers to protect plaintiff. The trial judge had opportunity to hear all the evidence to observe the witnesses and to weigh their testimony. In this situation we can not reverse the court's finding of fact in view of the fact that it was not against the manifest weight of the evidence. Cater Construction Co. v. Nischwitz, 7 Cir., 111 F.2d 971.

Defendants also contend that plaintiff failed to comply with its statutory duty when it refused to arbitrate as required by the Railway Labor Act, 45 U.S.C.A. § 157, and the Norris-LaGuardia Act, 29 U.S.C.A. § 108.

The Railway Labor Act provides that: "Whenever a controversy shall arise between a carrier * * * and its * * * employees which is not settled either in conference between representatives of the parties or by the appropriate adjustment board or through mediation * * * such controversy may, by agreement of the parties to such controversy, be submitted to the arbitration * * *: Provided, however, that the failure or refusal of either party to submit a controversy to arbitration shall not be construed as a violation of any legal obligation imposed upon such party by the terms of this chapter or otherwise."

The Norris-LaGuardia Act provides: "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

■ Plaintiff conceded that it refused to arbitrate. An examination of the record indicates, however, that it made an effort by mediation to reach a satisfactory arrangement with defendants, and that, after nearly a year of negotiations, the Mediation Board terminated the proceedings after arbitration proposals submitted by it were refused by both parties. Plaintiff further sought to reach a satisfactory agreement with defendants by suggesting that an emergency board be appointed by the President, as well as that an impartial committee be appointed to examine the dispute. It is thus apparent that there was no lack of good faith by plaintiff to bar its right to an injunction because of refusal to arbitrate. There is no compulsion on plaintiff to settle the differences between the parties or to enter into any agreement but merely to make a reasonable effort to compose differences. Virginian Ry. v. System Federation, 300 U.S. 515, 548, 57 S.Ct. 592, 81 L.Ed. 789.

■ The Railway Labor Act expressly provides that arbitration is not a condition precedent to securing an injunction. The Act states that on failure of other means, the parties "may" arbitrate, "provided, however," that refusal "shall not be construed as a violation of any legal obligation." Accepting the obvious intent of this section, it is clear that arbitration is not mandatory but voluntary, and that failure to arbitrate is not sufficient to bar legal action. Texas & N. O. Ry. v. Brotherhood of Railway and Steamship Clerks, 281 U.S. 548, 564, 50 S.Ct. 427, 74 L.Ed. 1034.

■ It is likewise clear that under the Norris-LaGuardia Act, plaintiff was not required to arbitrate. The Act specifically says that arbitration is voluntary, not compulsory, and further that the employer must make every reasonable effort to settle a dispute either by negotiation or mediation, or voluntary arbitration before he may obtain injunctive relief. The employer is not compelled to avail himself of all three methods; any one of them will fulfill the requirements. Thus in Mayo v. Dean, 5 Cir., 82 F.2d 554, 556, it was held that the employer is not obliged to propose both mediation and arbitration. Furthermore we have held that where violence and threats of violence are committed, Section 108 has no application. Cater Construction Co. v. Nischwitz, 7 Cir., 111 F.2d 971; United Electric Coal Co. v. Rice, 7 Cir., 80 F.2d 1; Newton v. Laclede Steel Co., 7 Cir., 80 F.2d 636.

■ Defendants further contend, however, that plaintiff gave only eight days' notice of the change affecting rates of pay, rules and working conditions, contrary to the obligation imposed by the Railway Labor Act, 45 U.S.C.A., § 156. Section 156 provides that carriers shall give at least 30 days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, but that,

when the services of the Mediation Board are involved, the rates of pay, rules, and working conditions shall be frozen until the Board has acted upon them according to Section 155. Under Section 155, it is provided that if arbitration at the request of the board shall be refused, the Board shall notify both parties that mediatory efforts have failed, and that there shall be no change in rates of pay, rules, or working conditions for 30 days. From these two sections, it is clear that section 155 is applicable, since the differences had been submitted to the Mediation Board, arbitration had been refused, and the parties had been notified that mediatory efforts had failed. Thus, if 30 days had elapsed from the time the Mediation Board gave its notice to the parties, plaintiff was within the act.

On December 17, 1940, and January 7, 1941, plaintiff delivered its proposed schedules of rules, working conditions and rates of pay. The services of the Mediation Board were invoked on January 15, 1941, and attempts to reach an agreement between the parties continued by the Board until November 21, 1941, when both parties refused to arbitrate and the Board terminated its mediation efforts. Prior to this, plaintiff had submitted its revised and amended proposals of rates of pay, rules and working conditions on November 3, 1941. On December 21, 1941 plaintiff notified defendants that its revised schedules would go into effect on December 29, 1941, and at 12:01 a. m. December 29, 1941 defendants struck. Defendants knew of plaintiff's revised schedule November 3, 1941, and the Mediation Board gave written notification of its withdrawal from the mediation proceedings on November 21, 1941. Both events occurred more than 30 days prior to the date when plaintiff's orders were put into effect. Since section 155 was the guiding section when the controversy was submitted to the Mediation Board, and more than 30 days had elapsed after the Board's withdrawal before any change in plaintiff's rates of pay, rules and working conditions, plaintiff complied with the Act.

Defendants finally contend that the evidence was insufficient to justify an injunction against all defendants, and that under Section 6 of the Norris-LaGuardia Act, 29 U.S.C.A. § 106 no labor organization interested in a labor dispute can be held responsible except upon clear proof of actual participation. The evidence was that officers of the union as well as many of the members had engaged in actual violence and that at at least one meeting plans for the strike had been discussed. The evidence was sufficient to justify the court in finding that the unions, as well as the individuals, were intimately concerned in the violence engaged in.

The judgment is affirmed.

MINTON, Circuit Judge (dissenting).

I am unable to agree with the majority opinion. In the first place, I do not think the District Court had any jurisdiction. This is not a case where diversity of citizenship forms the basis of jurisdiction. Here jurisdiction depends upon whether or not the controversy arises under the Constitution or laws of the United States. It is not a question of whether Congress could have taken cognizance of this kind of controversy; it is a question of whether or not it has taken such cognizance.

To give jurisdiction, the controversy must arise under the Constitution or laws of the United States. What is the controversy here? It is the right of the plaintiff to conduct its business of interstate carrier free from interference and violence at the hands of its striking employees. That right does not stem from the Constitution or any law of Congress. It does not even arise out of the interstate character of the business. The same identical right to be free from interference and violence in the conduct of its business runs to those engaged in intrastate business. The right violated is a common law right given by the State of Illinois and the other States through which the plaintiff's road runs. The right could have been enforced in any one or all of the States through which the plaintiff's road ran. The fact that the plaintiff was engaged in interstate commerce and some Federal statutes imposed some duties pertaining thereto, or that the plaintiff was carrying defense materials, is of no consequence on the question of jurisdiction. Such matters are only incidental. If the plaintiff can invoke the jurisdiction of the United States courts because its striking employees are interfering with its business as an interstate carrier, then every one who is engaged in interstate commerce has the right to claim the jurisdiction of the Federal courts to protect his common law rights. It takes no great imagination to

envisage what that would mean to the expansion of Federal jurisdiction in this day and age, when the concept of what constitutes interstate commerce under the Constitution has been so greatly extended.

As I understand the basis of the jurisdiction here claimed, the controversy which it is sought to resolve must stem from the Constitution or some act of Congress. Whenever the Constitution or an act of Congress gives rise to a right of action, a suit brought to enforce that right may be said to arise under the Constitution or laws of the United States so as to satisfy the jurisdictional requirement, and not otherwise.

This has been the accepted interpretation since the days of Chief Justice Marshall. In Cohens v. Virginia, 6 Wheat. 264, 379, 5 L.Ed. 257, 285, he said: "A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either."

A case whose correct decision depends upon the construction of the Constitution or laws of the United States is what gives jurisdiction. The case at bar depends upon no construction of any part of the Constitution or laws of the United States. It seeks only the enforcement of a common law right.

Again in Osborn v. Bank of United States, 9 Wheat. 738, 821, 822, 6 L.Ed. 204, 224, Chief Justice Marshall said: "A cause may depend on several questions of fact and law. Some of these may depend on the construction of a law of the United States; others on principles unconnected with that law. If it be a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law of the United States, and sustained by the opposite construction, provided the facts necessary to support the action be made out, then all the other questions must be decided as incidental to this, which gives that jurisdiction."

In Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 82, 41 S.Ct. 39, 41, 65 L.Ed. 145, a suit to enjoin striking employees from interfering with a corporation's business so as to cause delay in the fulfillment of its contracts with the Government to furnish war supplies and so as to impede its interstate business, the Supreme Court, speaking by Mr. Justice Clarke, said:

"The allegations of the bill that the contracts which the petitioner had with the United States government were of a character which must be given priority under section 120 of the National Defense Act, approved June 3, 1916 (39 Stat. pp. 166, 213 [50 U.S.C.A. § 80]), and that they involved interstate commerce, are much too casual and meager to give serious color to the claim now made that the cause of action asserted is one arising under the laws of the United States."

In Gully v. First National Bank, 299 U.S. 109, 112, 114, 57 S.Ct. 96, 97, 81 L.Ed. 70, 72, an action was brought in the State court by the State Collector of Taxes against the defendant bank that had assumed the debts and obligations of another bank. Among the debts assumed were taxes levied upon the shares of stock of the bank. Because the right of the State to assess the stock of a national bank was granted by an act of Congress, a petition of removal was granted to the District Court on the ground that it was a suit arising "under the Constitution or laws of the United States." The Supreme Court held there was no Federal jurisdiction, and remanded the case to the State court. Mr. Justice Cardozo said:

"The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * *

"'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.' Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. * * * 'the federal nature of the right to be established is decisive—not the source of the authority to establish it.'" [People of Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903.]

What law of the United States if given one construction will sustain the plaintiff's right, and if given another will deny it? Obviously, the construction of no law of the United States is involved in the right the plaintiff asserts. It is a common law

right, not a Federal right, that is asserted. "The federal nature of the right to be established is decisive," the Supreme Court says. There can be no Federal nature in a common law right.

In McGoon v. Northern Pacific Ry. Co., D.C., 204 F. 998, 1001, 1005, the court lays down the rule thus: "Whenever federal law grants a right of property or of action, and a suit is brought to enforce that right, such a suit arises under the law creating the right, within the meaning of statutes defining the jurisdiction of federal courts."

After reviewing numerous cases, the same court says: "The line of distinction which it seems to me will go far to harmonize the cases is this: When the complaint shows a case which arises out of a contract or a common-law right of property, and only indirectly and remotely depends on federal law, such a case not only does not, but cannot properly, turn upon a construction of such law."

From the rules enunciated so clearly in these cases, it seems apparent to me that no case under the Constitution or laws of the United States is presented, and the court is without jurisdiction and the case should be dismissed.

If, however, I am mistaken on the question of jurisdiction, there is a ground upon which the judgment of the District Court should be reversed and the plaintiff denied the relief sought.

After mediation had failed, the mediator proposed arbitration. The plaintiff refused to arbitrate. · The majority opinion neglected to state that the defendants offered to arbitrate. Voluntary arbitration is provided for by statute. 45 U.S.C.A. § 157 et seq. When negotiations between the parties and through the National Railroad Adjustment Board and the National Mediation Board have failed, the statute provides for voluntary arbitration. It is the purpose and the spirit of the Railway Labor Act to use all means of negotiation, mediation and arbitration to the end that controversies between the carriers and their employees may be resolved without conflict or strikes. The plaintiff was willing to pursue all the voluntary procedures set up by the Railway Labor Act which carried no sanction, but it refused to take the step into voluntary arbitration, because the award of the arbitrators was enforceable in a court of law. So the plaintiff refused to arbitrate.

The plaintiff exercised its right to refuse to arbitrate, and it did it without any excuse or justification. The District Court made no finding that it would have been useless or unreasonable for the parties to attempt to arbitrate their differences. The plaintiff stood upon its right to refuse to arbitrate, and this refusal, without justification or reason, brought into play another provision of law known as Section 8 of the Norris-LaGuardia Act, 29 U.S.C.A. § 108, which provides:

"§ 108. Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief.

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration. Mar. 23, 1932, c. 90, § 8, 47 Stat. 72."

As we said before, the plaintiff did not have to arbitrate. One does not have to register for a ration card, but if one does not, one gets no sugar. Plaintiff could spurn, as it did without rhyme or reason, the offer to arbitrate, but if it did, it lost the right to come into a court of the United States to obtain relief by injunction.

I am not prepared to agree that this court has held that where violence and threats of violence are committed, Section 108 has no application. Cater Const. Co. v. Nischwitz, 7 Cir., 111 F.2d 971, 977, and the cases it relies upon go only to the extent of holding that Section 108 does not apply if it is found or is apparent from the proceedings that negotiation would be useless. That takes the place of a reasonable effort to settle by negotiation, mediation and arbitration. The law does not require a futile thing, and if there is a finding to the effect that efforts to negotiate, mediate or arbitrate would be futile, that would be one thing. No such finding is present in the case at bar.

Neither am I prepared to agree that a reasonable effort to do either one of three things, to wit, negotiate, mediate or arbitrate, will satisfy the provisions of Section 108. Mayo v. Dean, 5 Cir., 82 F.2d 554, relied upon by the majority, holds that Section 108 is not applicable to the

case before them, but if it were applicable, they would hold its requirements had been met by mediation. Such a limited construction does not meet the situation Congress intended to remedy. The whole purpose of the Railway Labor Act is to induce settlement by voluntary negotiation, mediation and arbitration of all questions in dispute between employer and employee. It is the purpose of the Norris-LaGuardia Act to deny the aid of a Federal court of equity to one who has not exhausted his remedies for voluntary adjustment. Why should the courts of equity be open to a party who spurns the machinery for the voluntary adjustment of the dispute? There never would have been a strike in the case at bar if the plaintiff had accepted the offer of the employees to arbitrate. Once both parties had entered into arbitration, they were bound by the ultimate award of the arbitrators. 45 U.S.C.A. § 159.

One cannot in the absence of statutory authority claim the equitable jurisdiction of a Federal court until all administrative remedies have been exhausted. Myers v. Bethlehem Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Natural Gas Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276.

Since arbitration would have averted a strike, this means should have been exhausted before resort to a court of equity was claimed. The plaintiff's property was in no way molested or in danger until after the strike was called. The strike was called after the plaintiff refused to arbitrate. The plaintiff was in no position to demand the aid of a court of equity.

In this view of the case, the judgment should be reversed.