**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, J. Russell Coulter, R. M. Esslinger, D. L. Hughes and H. E. Kipling, Defendants.**

Brotherhood of Locomotive Firemen and Enginemen, Local Lodge 926, and Robert J. Strand, General Chairman, Local Lodge 926, and Garland F. Brown, John W. Towles and Local Lodge 1084 of the Brotherhood of Locomotive Trainmen, Intervenors.

**Civ. A. No. P-2513.**

United States District Court
S. D. Illinois, N. D.

Feb. 28, 1963.

Robert W. Russell, James P. Daley, Chicago, Ill., Timothy W. Swain, Mishael O. Gard, Peoria, Ill., for plaintiff.

Cassidy & Cassidy, Peoria, Ill., for defendants.

Knoblock & Ott, Peoria, Ill., Elson & Lassers, Alex Elson, Willard J. Lassers, Aaron S. Wolff, Chicago, Ill., Heiss, Day & Bennett, Cleveland, Ohio, for intervenors.

MERCER, Chief Judge.

This suit arose upon a complaint by the Chicago and North Western Railway Company, hereinafter plaintiff, against the Toledo, Peoria & Western Railroad Company, hereinafter T. P. & W., and certain officers of T. P. & W., for an injunction restraining T. P. & W., its officers, agents and employees from interfering with, delaying or preventing plaintiff from operating its trains, with its own crews, over a section of railroad track intervening between Sommer, Illinois, and the industrial plant of Archer-Daniels-Midland Company, hereinafter ADM.

Local Lodge No. 926 of the Brotherhood of Locomotive Firemen & Enginemen, Local Lodge No. 1084 of the Brotherhood of Railroad Trainmen and certain officers of the two local unions, hereinafter referred to as intervenors, were permitted to intervene as parties to the suit.

Plaintiff is a corporation organized under the laws of the State of Wisconsin, having its principal place of business at Chicago, Illinois, and is engaged as a common carrier in the transportation of persons and goods by railroad in interstate commerce. Defendant is a Delaware corporation, having its principal place of business at East Peoria, Illinois, and is engaged as a common carrier in the interstate transportation of goods in commerce. The intervening Local Unions are the collective bargaining agents for T. P. & W.'s operating employees.

Plaintiff alleges in its complaint that it obtained the right under a 1957 joint-trackage agreement with T. P. & W., to operate its engines and cars over tracks which permit it to serve ADM with its

own crews and power.[1] The movement required for such direct service to ADM would run from plaintiff's main line over a connecting track at Sommer, Illinois, to T. P. & W.'s main line track, then over T. P. & W.'s main line track, to a place called Kolbe Station and an industry track which leads from that point on T. P. & W.'s main line to ADM.

On April 10, 1962, after advising T. P. & W. of its intention to deliver a car directly to ADM and requesting T. P. & W.'s cooperation and aid in clearing the movement, plaintiff sought to deliver with its own power a loaded freight car consigned to ADM on a waybill directing delivery by plaintiff. Plaintiff's train was stopped by agents of T. P. & W. who refused to permit the train to move over T. P. & W.'s main line to the industrial track to ADM. On April 11, 1962, plaintiff sought to deliver four cars consigned to ADM over the joint trackage. Agents of T. P. & W. arrested a flagman of plaintiff's and stopped plaintiff's train from proceeding to the ADM plant by stationing themselves, a fusee and flag in hand, in the path of plaintiff's train and between the rails of T. P. & W.'s main line. On April 12, 13 and 14, 1962, attempts were again made by plaintiff to deliver cars to ADM. Each of those attempted deliveries was blocked by T. P. & W.'s agents by divers means, including, on one occasion, the device of placing a T. P. & W. engine and cars on T. P. & W.'s tracks in the path of plaintiff's train.

This complaint followed. Plaintiff alleges that the defendants have prevented and will continue to prevent the movement of goods consigned over the plaintiff's line in interstate commerce to plaintiff's irreparable injury and damage, unless defendants are enjoined from further interference with plaintiff's claimed rights under the 1957 contract.

Plaintiff's theory upon the merits of the case is that it has an absolute right under the provisions of the 1957 joint-trackage agreement to run its trains over a four-mile segment of T. P. & W.'s line to serve, directly, industries located in the industrial area to which the 1957 agreement refers.

T. P. & W. takes the position that the specific character of reciprocal use of the joint-trackage segments, as delineated in the 1957 agreement, is not fixed by that agreement, but is subject to further negotiation and agreement between the parties.

On July 13, 1962, I denied a motion by Intervenors to dismiss the complaint upon jurisdictional grounds. The ground particularly urged by the union was its contention that this suit involves or grows out of a labor dispute, and that jurisdiction to enter an injunction is spe-

1. That agreement, which is sometimes referred to as a joint-trackage agreement, was executed July 27, 1957, and approved by the Interstate Commerce Commission on October 28, 1958.

Plaintiff's main line and T. P. & W.'s main line run parallel, the one to the other, through Sommer, Illinois. T. P. & W. has substantial real estate holdings lying both northerly from Sommer and closely adjacent to plaintiff's main line, and southerly from Sommer adjacent to T. P. & W.'s main line. Those factors are recited as giving rise to the agreement.

Salient features of that agreement are the following provisions:

a. A joint industrial area is delimited, encompassing T. P. & W.'s lands and other lands in close proximity to the respective rail lines;

b. A provision was made for the construction of an interchange track at Sommer connecting the main line of plaintiff with main line of T. P. & W.;

c. Provision was made for the construction of the industry track into the area where ADM's plant is now located; and,

d. Approximately 5.9 miles of plaintiff's track, extending northerly from Sommer, and approximately 4.0 miles of T. P. & W.'s track, extending southerly from that point, together with certain industry tracks to be built is designated as joint trackage.

The Sommer interchange feature of this contract was the subject of litigation in Chicago & N. W. Ry. Co. v. Peoria & P. U. R. Co., S.D.Ill., 201 F.Supp. 241.

cifically proscribed by the Norris-LaGuardia Act. 29 U.S.C.A. § 101.

 Having reconsidered the jurisdictional issues subsequent to a trial of the case, I adhere to my prior decision insofar as Norris-LaGuardia is concerned. The most that can be said for intervenors' position is that the intervening local unions represent T. P. & W.'s operating employees and they have indicated to T. P. & W. that a strike is probable if plaintiff is permitted to operate over T. P. & W. lines with its own crews. At most, a conditional threat of a labor dispute lurks, collaterally, in the background of this litigation. I think it clear that no labor dispute within the intendment of Norris-LaGuardia is involved.[2]

The critical jurisdictional question is posed by the contention of defendants and intervenors that there is no issue arising under any federal act regulating commerce, and, thus, no statutory basis for federal jurisdiction over this suit.[3] In my memorandum filed July 13, 1962, I said, "The existence of federal jurisdiction in cases of this nature is sustained" by Toledo, Peoria & Western Railway Company v. Brotherhood of Railroad Trainmen, 7 Cir., 132 F.2d 265, and other cases. After mature reflection and reappraisal of the pertinent authorities, I am convinced that my statement was in error and that federal jurisdiction does not exist.

Section 1337 of the Judicial Code, 28 U.S.C.A. § 1337, provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * *."

 The courts have not always agreed upon the question of what is a suit arising under a federal statute, but with the passage of time certain guidelines have been established. Paramount among these is the postulate that a right or immunity created by a federal statute must be involved before a federal question is presented. The federal nature of the right is decisive, and jurisdiction cannot be determined by the source of the authority to establish the right. Gully v. First National Bank, 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70. The federal right must be a paramount, not collateral, issue in the suit. "The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." Ibid, 299 U.S. at 112, 117, 57 S.Ct. at 97, 99.

In Toledo, P. & W. R. Co. v. Brotherhood of Railroad Trainmen, etc., 7 Cir., 132 F.2d 265, reversed on the merits 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534, the court said in pertinent part:

"The mere fact that Congress has paramount power to legislate in certain fields is not alone sufficient to confer jurisdiction. Thus the fact that a patent is involved will not result in federal jurisdiction if the real issue concerns merely title to the patent, for that is not a matter arising under a federal law. * * *

2. Compare, situations in which Norris-LaGuardia was held to bar federal jurisdiction: Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440, an attempt to enjoin a strike called in violation of a "no strike" clause; Johnson Co. v. Marchiando, 7 Cir., 184 F.2d 377, an attempt to enjoin Progressive Mine Workers from picketing a shaft being constructed with United Mine Workers employees; Lee Way Motor Freight v. Keystone Freight Lines, 10 Cir., 126 F.2d 931, cert. denied 317 U.S. 645, 63 S.Ct. 37, 87 L.Ed. 519, and East Texas Motor Freight Lines v. International Brotherhood, etc., 5 Cir., 163 F.2d 10, attempts to enjoin enforcement of "hot cargo" clause; with the situation at bar and Baltimore & Ohio R. Co. v. Chicago River & I. R. Co., 7 Cir., 170 F.2d 654, a suit to enforce a mandatory I. C. C. order by injunction.

3. All parties are citizens of Illinois within the meaning of 28 U.S.C.A. § 1332 and diversity jurisdiction is not asserted.
 Plaintiff relies upon 28 U.S.C.A. § 1337, with reference to 49 U.S.C.A. §§ 1(4), 1(6), 1(11), 1(18–20), and 5(2) (a) (ii), to establish jurisdiction.

Similarly, if one of the parties is engaged in interstate commerce and subject to regulation under a federal statute, the court has no jurisdiction of matters concerned solely with a contract between the adverse parties. * * * To give rise to federal jurisdiction, the basis of the suit must be concerned with the validity, construction, enforcement or effect of the statute; anything less is insufficient. * * *

"We well know that the mere fact that Interstate Commerce is involved and may be affected, is not sufficient to justify jurisdiction of a private suit seeking protection of such commerce. * * * But if the suit directly concerns an Act of Congress a carrier may seek relief in a federal court. * * *

" * * * Our question then is whether plaintiff has rights and obligations under Federal Acts, the enjoyment and discharge of which defendants are preventing. If so a statute of the United States is directly involved and the District Court had jurisdiction." 132 F.2d at 268.

In State Automobile Insurance Ass'n v. Parry, 8 Cir., 123 F.2d 243, in which interpretation of an endorsement in a policy of insurance was the issue, the court held that federal jurisdiction did not exist, notwithstanding the fact that the particular endorsement was inserted to conform the policy to the requirements of the Motor Carrier Act and an order of the Interstate Commerce Commission.

In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 450, 75 S.Ct. 489, 495, 99 L.Ed. 510, the court said, in pertinent part:

"Almost without exception, decisions under the general statutory grants of jurisdiction * * * have tested jurisdiction in terms of the presence, as an integral part of plaintiff's cause of action, of an issue calling for interpretation or application of federal law. Although it has sometimes been suggested that the 'cause of action' must derive from federal law, it has been found sufficient that some aspect of federal law is essential to plaintiff's success. The litigation-provoking problem has been the degree to which federal law must be in the forefront of the case and not be remote, collateral or peripheral."

■ The issue, here, is whether plaintiff's claim relates to rights and obligations arising under the Interstate Commerce Act, "the enjoyment and discharge of which defendants are preventing."

I find no such rights and obligations involved. The issue upon the merits, reduced to essentials is what rights, if any, plaintiff obtained under the 1957 agreement with T. P. & W. to operate its trains over the T. P. & W. segment of joint-trackage. Plaintiff's rights in the premises, whatever they are or may be, arise out of that agreement, not out of the provisions of the Interstate Commerce Act. 49 U.S.C.A. § 1 et seq.

Of course, plaintiff does have the obligation to furnish transportation upon request over reasonably established through routes in interstate commerce at reasonable rates, Section 1(4), under reasonable regulations and practices, Section 1(6), and to furnish safe and adequate car service under reasonable rules and practices. Section 1(11). There is, however, no allegation of defendants' interference with plaintiff's performance of those obligations. The Act contemplates that the obligation imposed by those subsections can be fulfilled by the utilization of interchange connections with other carriers. There is no allegation that the cars consigned to and from ADM will reach their terminal destination only if plaintiff's power and plaintiff's crews serve ADM directly. On the contrary, it is uncontradicted that, prior to April 10, 1962, all cars moving on plaintiff's line to ADM were interchanged at Sommer for terminal delivery by T. P. & W. It is likewise undisputed that service to ADM will continue unfettered, irrespec-

tive of the interpretation of this contract, and irrespective of whether terminal delivery is effected by plaintiff or by T. P. & W.

The fact of approval of the agreement by the Interstate Commerce Commission has no significant bearing upon the jurisdictional question. No mandatory order of the I. C. C. is involved. Although the Sommer connection and the joint-trackage arrangement could not legally be undertaken without I. C. C. approval, 49 U.S.C.A. § 5(2) (a) (ii), its approval was permissive only. The project might have been abandoned by the parties and the agreement never made without penalty. The fact that the Sommer connection was constructed and the agreement made may well create additional rights in the shipping public, but it does not have the effect of incorporating the contract into the Commerce Act insofar as the respective rights of plaintiff and T. P. & W. are concerned.[4]

What has been said above largely disposes of the contention that defendants' acts constitute a forced abandonment of service by plaintiff in violation of Section 1(18) and 1(19) of the Act. There is no allegation that plaintiff has ever rendered the service of terminal delivery to ADM or has ever operated its trains over the segment of track involved. In short, an analysis of the situation and its bearing upon this contention leads, ultimately, to the proposition that plaintiff claims the denial to it of a contractual right which, in fact, it has not to date enjoyed.[5] Terminal delivery to, and pickup from, ADM by T. P. & W., which T. P. & W. asserts to be the proper interpretation

of the contract, would not constitute a violation of the Act. In that posture of the situation, it is specious to suggest that the defendants' actions have precipitated a forced abandonment of any portion of railroad line or service.

The situation presented by this complaint is unlike the factual background existing in Toledo, P. & W. R. Co. v. Brotherhood of Railroad Trainmen, etc., 7 Cir., 132 F.2d 265, reversed on the merits, 321 U.S. 50, 64 S.Ct. 413, 88 L. Ed. 534, and Brotherhood of Railroad Trainmen, etc. v. New York C. R. Co., 6 Cir., 246 F.2d 114, upon which plaintiff principally relies.

In the T. P. & W. case, a rupture in collective bargaining between T. P. & W. and the union had led to violence against the employees and equipment of T. P. & W. to such extent that the railroad had been obliged to discontinue a substantial part of its operations. Against that background of violence, the Court of Appeals for the Seventh Circuit held that the defendants were preventing T. P. & W. from performing the duties imposed upon it by the Interstate Commerce Act. The court held that federal jurisdiction was present.[6]

In the New York Central case, the union called a strike to protest the closing by Central of one of its railroad yards at Toledo, Ohio, pursuant to authority granted to Central by the Interstate Commerce Commission. The court found that that strike had the effect of halting a substantial part of Central's operations, precipitating the lay-off of substantial numbers of employees on Central's western division, interfering with the opera-

---

4. No shipper complaint is involved. There is no allegation that ADM has been dissatisfied with the service offered by T. P. & W. in the terminal delivery of cars consigned to that company over plaintiff's road. Nor is the jurisdictional claim grounded upon the rights of shippers, except to the extent that shipper rights are a correlative of the duties imposed by the sections of the Commerce Act upon which plaintiff relies.

5. See Note 4, supra.

6. The issue of jurisdiction is not mentioned in the Supreme Court's opinion reversing the T. P. & W. case. The Court held that T. P. & W. was not entitled to injunctive relief because it had failed to comply with the arbitration provisions of the Railway Labor Act. In the absence of such compliance, the Court held that T. P. & W. was not entitled to invoke the jurisdiction of a federal court for its protection. Brotherhood of Railroad Trainmen, etc. v. Toledo, P. & W. R. Co., 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534.

tions of several other railroads which use Central's passenger terminals and precluding Central from carrying out its statutory duties as a carrier.

Here, by contrast, there is no interference with plaintiff's statutory obligations to the public. If, indeed, defendants' acts are illegal, the illegality arises from a breach of a contract not a statutory violation.

Judgment will be entered for the defendants dismissing the complaint for want of federal jurisdiction.

In discussing the jurisdictional question, no expression of any opinion as to the proper interpretation of the 1957 contract is intended by the court. Nothing said in this memorandum should be so construed.